**SOUTH CAROLINA POWER CO. v. SOUTH CAROLINA TAX COMMISSION et al.**

**BROAD RIVER POWER CO. v. QUERY et al.**

**LEXINGTON WATER POWER CO. v. SAME.**

District Court, E. D. South Carolina.
July 21, 1932.

Hagood, Rivers & Young, of Charleston, S. C., and Martin, Thompson & McWhorter, of Birmingham, Ala., for complainant South Carolina Power Co.

Elliott, McLain, Wardlaw & Elliott, of Columbia, S. C., and Travis, Paxson, Wallace & Philbin, of New York City, for complainants Broad River Power Co., and Lexington Water Power Co.

John M. Daniel, Atty. Gen., and J. Fraser Lyon, of Columbia, S. C., for defendants.

Before PARKER and NORTHCOTT, Circuit Judges, and COCHRAN, District Judge.

PARKER, Circuit Judge.

These cases were before us some months ago on applications for interlocutory injunctions; and the legal questions involved were carefully considered at that time. See 52 F.(2d) 515. The orders denying interlocutory injunctions were affirmed on appeal to the Supreme Court. 52 S. Ct. 494, 76 L. Ed. ——. On final hearing the facts have been stipulated; and, in our opinion, they are not materially different from the facts as found on the applications for interlocutory injunctions. No extended discussion of the case is therefore required. For the reasons stated in our original opinion, we think that we should deny the injunctions prayed and dismiss the bills. So far as the questions raised under the commerce clause of the Constitution are concerned, we are fortified in our conclusion by the recent decision of the Supreme Court in the case of Utah Power & Light Co. v. Pfost, 52 S. Ct. 548, 76 L. Ed. 1038.

We desire to notice one question raised on the final hearing of the South Carolina Power Company's Case which was not raised on the application for interlocutory injunction. This question relates to the tax on so much of its current as is sold to the Seminole, Aiken, Langley, and Graniteville Manufacturing Company mills and to the towns of McCormick and Bamberg. With respect to the current sold to the mills, it appears that this is supplied to them by wires connecting with the wires of the power company carrying high-voltage current from its Stevens Creek plant. Wires from the high-tension wires run to transformers owned by the mills; and the current is there stepped down and measured on the low-voltage side of the transformers. In the case of the town of McCormick, a high-voltage transmission line delivers current to it from the Stevens Creek plant. Before reaching McCormick, however, this line delivers current, with voltage reduced through transformers, to consumers in four municipalities. The town of McCormick receives the current at the high voltage, reduces it, and sells it to consumers. In the case of the town of Bamberg, the voltage of the current is reduced by the company, but the current is sold by the town to the ultimate consumers.

We do not think that any of these special circumstances bring the current sold under the protection of the commerce clause of the Constitution. The power company is engaged in selling current locally within the state of South Carolina; and the tax complained of is imposed on sales in the course of this business. Of course, the state may not tax the interstate transmission or sale of electricity; but, after the interstate journey of the current is ended and it becomes mingled with the current which the power company distributes and sells within the state, its sale unquestionably becomes subject to taxation by the state. The power company has a great system of lines within the state of South Carolina for the transmission and sale of electric current; and, when the

current brought in from without the state reaches the lines used for this purpose, its interstate character is ended, and it becomes subject to tax in the same manner as current produced within the state.

The bill of complaint of the power company shows that there is an inextricable intermingling on its transmission lines of the current brought from without and that produced within the state. In one place in the bill it is said: "The electrical energy brought from the state of Georgia and the electrical energy generated in complainant's steam plant in Charleston are fed into the interconnected transmission system of the complainant, the meeting point of these two sources of supply being indefinite and changing from instant to instant." And at another place it is said: "The demands of complainant's various customers in South Carolina occur on various transmission and distribution lines in such state, and these demands are supplied from the generating plants at Charleston, South Carolina, and Stevens Creek, Georgia (except that in the case of deficiency of flow in the Savannah River this demand to the extent of such deficiency is supplied from the system of the Georgia Power Company). There is thus created a continuing, combined demand on those two generating plants located in different states which exists throughout the entire interstate system." Certainly, if these allegations are accepted, there can be no question as to the power of the state to tax the local sales of current made from its current carried on its local distribution lines, which is the joint product of manufacture within and without the state; for such current has thus become mingled, as it were, with the mass of property within the state, and as such is subject to state taxation. Askren v. Continental Oil Co., 252 U. S. 444, 40 S. Ct. 355, 64 L. Ed. 654; General Oil Co. v. Crain, 209 U. S. 211, 28 S. Ct. 475, 52 L. Ed. 754.

It is said, however, that, notwithstanding the allegations of the bill, we should find that the current supplied to the town of McCormick is carried by a line not connected with any producing plant in South Carolina, and is therefore not mingled with any current produced within the state, and that the mills, while on a line connected with the producing plant at Charleston, S. C., are not reached by the current produced at that point. Even if this be assumed, we do not think that the position of the power company is helped. The fact remains that the lines which supply the town of McCormick and the mills in question are lines maintained for the local distribution and sale of electric current; and, when current brought in from another state is placed on these lines for local distribution and sale, it loses its interstate character. And it makes no difference that delivery is made to the local customer at high voltage. The quantity of current is measured, not in volts, but in amperes; and, when current is drawn off the lines, the "original package" is broken and the amperage remaining on the lines is reduced. The line to McCormick, for instance, carries the current which the power company uses to supply its customers in Merriwether, Modoc, Parksville, and Plum Branch. The current which the line carries is broken up for sale to these various users and the town of McCormick obtains only a part of the current carried on the line. The situation presented is not different in principle from that of a dealer who brings into the state a cargo of fertilizer in bulk and sells it partly at wholesale and partly at retail. No one would question the power of the state to tax the business of such dealer.

The case of State Tax Commission of Mississippi v. Interstate Natural Gas Co., 284 U. S. 41, 52 S. Ct. 62, 76 L. Ed. 156, upon which the power company particularly relies, is not in point. In that case, the company upon which the tax was levied was not engaged in business in the state which proposed to levy the tax. It merely sold natural gas which it had transported from another state to a local distributing company. Here not only is the power company engaged in the business of selling electric current locally, but the current sold to all of its customers is drawn from the lines which it uses for the purpose of carrying on the business of local distribution and sale.

There is no escaping the fact that the business of the South Carolina Power Company is primarily local in character. Its system of lines is used for the distribution and sale of electricity within the state of South Carolina. As stated above, a large part of the electric current distributed and sold by it is produced within the state, and the part brought from without the state is handled over the local distribution system and is distributed and sold locally. As said by the Supreme Court in Missouri v. Kansas Natural Gas Co., 265 U. S. 298, 309, 44 S. Ct. 544, 546, 68 L. Ed. 1027, with respect to the distribution and sale of natural gas: "The business of supplying, on demand, local con-

sumers is a local business, even though the gas be brought from another state and drawn for distribution directly from interstate mains; and this is so whether the local distribution be made by the transporting company or by independent distributing companies. In such case the local interest is paramount, and the interference with interstate commerce, if any, indirect and of minor importance."

The case cannot be distinguished in principle, we think, from East Ohio Gas Co. v. Tax Com. of Ohio, 283 U. S. 465, 51 S. Ct. 499, 75 L. Ed. 1171. The tax complained of is levied, not on sales made in carrying on commerce between the states, but on sales made in the operation of a local distribution system. It is immaterial that a part of the electrical energy used by such system is obtained from without the state; and it is likewise immaterial that distribution is made to some customers at a high voltage.

In all three cases, the prayers for permanent injunction will be denied, and the bills will be dismissed.

Injunction denied, and bills dismissed.