## OLDETYME DISTILLERS, Inc., v. GORDY.

### No. 2475.

District Court, D. Maryland.

Dec. 16, 1936.

Armstrong, Machen & Allen, of Baltimore, Md., and A. Earl Shipley, of Westminster, Md., for plaintiff.

Herbert R. O'Conor, Atty. Gen., and William ∎L. Henderson, Asst. Atty. Gen., for defendant.

Before SOPER, Circuit Judge, and COLEMAN and CHESNUT, District Judges.

∎ COLEMAN, District Judge.

This is a suit in equity to enjoin the defendant, Comptroller of the state of Maryland, from collecting from the complainant, a New Jersey corporation with a plant in Maryland for the manufacture of distilled spirits, an excise tax of 5 cents on each proof gallon of whisky or other spirits distilled for beverage purposes in Maryland, pursuant to the provisions of section 41B of article 2B of the Code of Public General Laws Supp. of Maryland 1935 (Laws 1936, Ex.Sess., c. 10, § 2, effective April 4, 1936). A prompt hearing following the issuance of a temporary restraining order has been had before a three-judge court, convened and constituted in accordance with section 266 of the Judicial Code, as amended (28 U.S.C.A. § 380), and the case has been submitted for decision not only on complainant's application for a preliminary injunction, but also for final decree on the merits.

The text of the Maryland statute which is the basis of the present controversy is as follows: "There shall be levied and collected for the privilege of engaging in the business of manufacturing whiskey or other distilled spirits for beverage purposes, on and after April 1st, 1936, to and including March 31st, 1937, an excise tax payable by the manufacturer thereof, in addition to all other license fees and taxes provided by law, at the rate of five cents (5¢) on each proof gallon of whiskey or other spirits distilled for beverage purposes in this State, and at a like rate upon all fractional parts of such proof gallon.

Said tax shall be due and payable monthly, and every person liable for the tax shall on or before the tenth day of May, 1936, and on or before the tenth day of each calendar month thereafter, make a proper return to the Comptroller of the tax due for the preceding month and remit to the Comptroller the required tax. Provided, however, that any manufacturer or wholesaler selling or delivering any distilled spirits to retail dealers within the State of Maryland upon which the tax imposed by this sub-title has been paid, shall be entitled to credit therefor as against the tax due under Section 37 of this Article." Section 37 of article 2B to which the proviso just quoted relates levies "on all distilled spirits or liquors and on all other alcoholic beverages containing more than fourteen per centum of alcohol, except wines, sold or delivered by any manufacturer or wholesaler to any retail dealer in this State, a tax at the rate of One Dollar and ten cents ($1.10) per gallon, * * * which * * * shall be paid by the manufacturer or wholesaler to the Comptroller for the use of the State of Maryland, before any such alcoholic beverages are removed from the place of business or warehouse of the manufacturer or wholesaler, or delivered to any retail dealer in this State."

Complainant contends that the 5 cents per gallon tax is invalid for two reasons: First, because it violates the commerce clause of the Federal Constitution (article 1, § 8, cl. 3), in that it lays a direct burden upon every sale of whisky or other distilled spirits manufactured in Maryland, but shipped to other states, while exempting from such tax similar goods both manufactured and sold in Maryland; and, second, because it violates the due process and equal protection of the law clauses of the Fourteenth Amendment of the Federal Constitution in that (1) it is excessive in relation to the cost of production; and (2) while purporting to levy an excise tax only upon liquor distilled for beverage purposes, since the initial process necessary to distill spirits for beverage purposes and for industrial purposes is the same, at the completion of which the spirits become subject to the tax, taxability is not determined by the use to which the spirits are ultimately put, but is made to depend upon the intention of the manufacturer, often not capable of ascertainment until several years after distillation, due to aging of the spirits, by which time also a considerable amount of evapo-

ration has taken place, with the result that the tax is required to be paid upon distilled spirits which never actually enter any market.

The state comptroller denies complainant's right to equitable relief on either of these grounds. In addition, he asserts that complainant has an adequate remedy at law, and that the present suit is, in any event, prematurely brought, in that since the effective date of the act, no spirits distilled by the complainant have been sold (due to the necessity for aging); that, therefore, complainant has shown no present injury; and that the mere allegation of complainant that it intends to sell a large part of its distilled spirits outside the state of Maryland, unless prevented by the burden of this tax (which it states to be approximately 20 per cent. of the cost of manufacture up to the time the tax is payable), is not sufficient to entitle it to equitable relief.

■ FIRST, THE QUESTION OF EQUITY JURISDICTION. Although all other jurisdictional requirements appear to be met, nevertheless if the complainant has an adequate remedy at law, it is too firmly established to require citation of authority that equitable relief should be denied. However, from the admitted facts and from the Maryland taxing laws, it is obvious complainant does not have an adequate remedy at law. There are no provisions for payment under protest, suit for refund, and then reimbursement in the event it is determined the tax was invalidly imposed. Any reimbursement would depend upon the pleasure of the Maryland General Assembly. See American Airways v. Wallace (D.C.) 57 F.(2d) 877, affirmed 287 U.S. 565, 53 S.Ct. 15, 77 L.Ed. 498; Dawson v. Kentucky Distillers Company, 255 U.S. 288, 41 S.Ct. 272, 65 L.Ed. 638. See also, Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070, 39 A.L.R. 468; Rast v. Van Deman & Lewis Co., 240 U.S. 342, 36 S.Ct. 370, 60 L.Ed. 679, L.R.A.1917A, 421, Ann.Cas. 1917B, 455. Section 41C provides merely that the tax when collected shall be paid by the comptroller into the "State Fund for Aid to the Needy." Failure to pay the tax subjects the manufacturer to revocation of his license, and a fine as great as $1,000, or to imprisonment as long as two years, or both. Sections 41C and 51. Complainant's average monthly payments under the alleged

invalid act have been in excess of $7,-000.

Under the Maryland law, every manufacturer of alcoholic beverages must first obtain a license, costing $1,000. Section 3 (1). He may then sell to a state licensed wholesaler or retailer. Section 3 (1). If he sells to a licensed retailer, the tax of $1.10 per gallon is required to be paid to the state (evidenced by affixing stamps to the liquor so sold), before removal of the goods from the manufacturer's place of business or warehouse. Section 38. On goods so sold, and on which the manufacturer's tax of 5 cents per gallon has been paid, "credit therefor" is given "as against the tax due under Section 37 of this Article," to wit, the $1.10 tax. Section 41B. An "importer" is defined as any person, firm, or corporation, whether resident or nonresident of Maryland, that transfers or ships alcoholic beverages into the state from any other state or foreign country. Section 1 (7). He must be a local wholesaler or manufacturer. Section 27. On goods so brought into Maryland, no tax is laid unless and until sold, when the $1.10 tax applies. Thus it will be seen that on all liquor locally manufactured, a tax of 5 cents is paid; on all local sales of locally manufactured liquor, a net sales tax of $1.05 is paid; on all local sales of "imported" liquor, a tax of $1.10 is paid; or, in other words, liquor manufactured in the state destined for sale outside the state, pays the state $1.05 less than liquor so made but sold within the state; and $1.05 less than liquor "imported" into the state and sold therein.

Complainant has regularly made the monthly returns and payments as required by the state law, up to the time of filing the present suit; and is required to pay into court all subsequent amounts as due, pending the outcome of this suit.

We are not concerned with whether "imported" liquor is discriminated against. Indeed, in view of the Supreme Court's decision in State Board of Equalization of California v. Young's Market Co., 57 S.Ct. 77, 81 L.Ed. —, decided November 9, 1936, a differential against "imports" is not invalid since the Twenty-First Amendment.

SECOND, THE COMMERCE CLAUSE; THE TAX IN RELATION THERETO. Complainant's contention that the manufacturer's tax of 5 cents is invalid under the commerce clause, because imposing a discriminatory burden upon liquor shipped out of Maryland, seems to amount to this: That if the tax had been levied without discrimination upon all sales of liquor, whether within or without the state, it would have been invalid because sales in interstate commerce *are* interstate commerce, and, as such, cannot be taxed because to do so would be placing a burden on interstate commerce, as held in such decisions as Cook v. Pennsylvania, 97 U.S. 566, 24 L.Ed. 1015; Adams Express Co. v. Ohio State Auditor, 166 U.S. 185, 17 S.Ct. 604, 41 L.Ed. 965; Dahnke-Walker Co. v. Bondurant, 257 U.S. 282, 42 S.Ct. 106, 66 L.Ed. 239; Furst v. Brewster, 282 U.S. 493, 51 S.Ct. 295, 75 L.Ed. 478; that likewise, a production or manufacturer's tax, which *wholly* exempted products sold locally would be invalid as a discrimination against products shipped out of the state for sale; and that invalidity cannot be avoided merely because, as in the present case, the products sold locally are still subjected to a sales tax that is heavier than the production tax that is retained upon products shipped out of the state, but not upon products sold within the state. In other words, the gist of complainant's contention is that it is not permissible to look through form to substance, even though by so doing it is found that the Maryland producer-exporter is assessed $1.05 less than is the Maryland producer who disposes of his product locally, because in so doing two distinctly different kinds of taxation must be matched against each other, to wit, a tax levied upon the privilege of manufacturing and a tax levied upon the privilege of selling, a comparison which is claimed to be forbidden because the two *are* different.

With such reasoning we cannot agree. That the taxes are distinct in kind is true. But if each may be validly imposed, it is legitimate, indeed necessary, to pass beyond the mere stated object or size of each, and to weigh their combined effect. They both form part of one and the same scheme, or system, adopted by the state of Maryland for obtaining revenue from distilled spirits. In fact, the act which imposes the later, i. e., the manufacturer's tax, expressly refers to the act which imposes the earlier, i. e., the sales tax, and provides that there shall be a credit for the amount of the one against the other. In Hinson v. Lott, 8 Wall. 148, 19 L.Ed. 387, there was involved a liquor taxing statute of the state of Alabama, one section of which imposed a tax of 50 cents

per gallon on all spirituous liquors introduced into the state for sale, while previous sections of the same statute imposed a tax of 50 cents per gallon on all whisky and all brandy from fruits manufactured in the state. An importer attacked the sales tax on the ground that it violated the commerce clause in that it imposed a direct burden upon interstate commerce. But the court held otherwise saying (at pages 150, 152, 153 of 8 Wall., 19 L.Ed. 387):

"If this section stood alone in the legislation of Alabama on the subject of taxing liquors, the effect of it would be that all such liquors brought into the State from other States and offered for sale, whether in the original casks by which they came into the State or by retail in smaller quantities, would be subject to a heavy tax, while the same class of liquors manufactured in the State would escape the tax. It is obvious that the right to impose any such discriminating tax, if it exist at all, cannot be limited in amount, and that a tax under the same authority can as readily be laid which would amount to an absolute prohibition to sell liquors introduced from without while the privilege would remain unobstructed in regard to articles made in the State. If this can be done in reference to liquors, it can be done with reference to all the products of a sister State, and in this mode one State can establish a complete system of non-intercourse in her commercial relations with all the other States of the Union. * * *

"The tax in the case before us, if it were of the character we have suggested, discriminating adversely to the products of all the other States in favor of those of Alabama, and involving a principle which might lead to actual commercial non-intercourse, would, in our opinion, belong to that class of legislation and be forbidden by the clause of the Constitution just mentioned.

"But a careful examination of that statute shows that it is not obnoxious to this objection. A tax is imposed by the previous sections of the same act of fifty cents per gallon on all whiskey and all brandy from fruits *manufactured* in the State. In order to collect this tax, every distiller is compelled to take out a license and to make regular returns of the amount of distilled spirits manufactured by him. On this he pays fifty cents per gallon. So that when we come in the light of these earlier sections of the act, to examine the 13th, 14th, and 15th sections, it is found that no greater tax is laid on liquors brought into the State than on those manufactured within it. And it is clear that whereas collecting the tax of the distiller was supposed to be the most expedient mode of securing its payment, as to liquors manufactured within the State, the tax on those who sold liquors brought in from other States was only the complementary provision necessary to make the tax equal on all liquors sold in the State. As the effect of the act is such as we have described, and it institutes no legislation which discriminates against the products of sister States, but merely subjects them to the same rate of taxation which similar articles pay that are manufactured within the State, we do not see in it an attempt to regulate commerce, but an appropriate and legitimate exercise of the taxing power of the States." (Italics ours).

We can see no distinction, in principle, between Hinson v. Lott, supra, and the situation now before us. True, in Hinson v. Lott, the court was dealing with shipments into, not out of, a state. At the same term it held in Woodruff v. Parham, 8 Wall. 123, 19 L.Ed. 382, that "imports," so-called, from another state were not in fact "imports" within the meaning of the Constitution, because that term was there used to denote goods coming from foreign countries, and proceeding to consider the tax in controversy in the light of the argument that, although uniform as to sales of all goods whether produced within or without the state of Alabama, it was nevertheless a forbidden burden on interstate commerce, the court declared it was not, saying (at page 140 of 8 Wall., 19 L.Ed. 382): "The case before us is a simple tax on sales of merchandise, imposed alike upon all sales made in Mobile, whether the sales be made by a citizen of Alabama or of another State, and whether the goods sold are the produce of that State or some other. There is no attempt to discriminate injuriously against the products of other States or the rights of their citizens, and the case is not, therefore, an attempt to fetter commerce among the States, or to deprive the citizens of other States of any privilege or immunity possessed by citizens of Alabama."

Prior to the adoption of the Twenty-First Amendment, a state court could not discriminate against intoxicating liquor brought from other states. Now it may,

by virtue of the very language of that Amendment. State Board of Equalization v. Young's Market Co., supra. That amendment does not expressly refer to shipments from, as it does to shipments into, a state. Nor were the former involved in the Young's Market Co. Case, supra. It is argued on behalf of the state in the present case, and not without some force, that, while this decision left open such questions as the one now presented, nevertheless the "importing" and "exporting" of intoxicating beverages are both so closely related to questions inherent in a state's determination of its own liquor-control policy—which is the basis of the Twenty-First Amendment—there is no logical force in the suggestion that they be differentiated. That is to say, the state asserts that its power to effectuate such policy by taxation, or otherwise, is now equal in the two cases. For example, the state argues that since it may now forbid within its borders manufacture of whisky altogether, or may allow its manufacture but forbid its sale locally, it could, in such case, impose a production tax on it, and the producer could not be heard to say that such a tax was invalid on the ground that the burden of it would fall entirely upon whisky intended for sale, because required to be sold, outside the state. This much certainly is true; that the Twenty-First Amendment did not lessen the authority of the states to tax intoxicating liquor, wherever destined for sale or consumption. But, in addition, prior to that amendment there was never, so far as we have been able to ascertain from the decisions of the Supreme Court, any rule laid down differentiating between the limitations upon the power of a state to tax goods, generally, produced within, for shipment without, its own borders, and those produced outside of, and brought within, its own borders.

Complainant argues that since a tax on sales has its incidence *after* interstate commerce in "imports" has ended, there is no discrimination if the tax falls on all goods alike, although as to those of domestic origin it may be denominated a production tax; but a tax on manufacture has its incidence *before* interstate commerce in "exports" has begun, and that, therefore, in order to avoid discrimination against interstate commerce, there must be equality at the time of the incidence of the tax, namely, *before* any sale, and complainant argues that such is not true with respect to the Maryland law under review.

But complainant misinterprets the Maryland law. Every gallon produced, no matter where destined, is actually taxed in exactly the same way, at the same time, and in the same amount. A credit for the amount is simply allowed "against," that is, upon, the amount of the sales tax if such becomes payable. The producer is not entitled to get back one penny of the production tax. Thus, we are not called upon to decide whether it would really have made any difference if, instead of a credit on the one tax, a refund of the other had been provided for. The direct effect, even if not the intent and ultimate result of the act, is clearly not that the producer of liquor in Maryland shall be refunded the production tax, but that the seller of liquor so produced shall pay a sales tax of 5 cents per gallon less than the seller of "imported" liquor. Such is not a discrimination against "exported" liquor. Rather it is a discrimination against "imported" liquor, which is permissible.

Thus, there being no material, factual distinction between Hinson v. Lott and the present suit, what the Supreme Court there said is controlling here. There the two taxes were in separate sections of the same act. Here, the two taxes are embodied in separate sections of the same article, which constitutes one scheme, or system, for the taxation of distilled spirits for beverage purposes.

In Lyng v. Michigan, 135 U.S. 161, 10 S.Ct. 725, 726, 34 L.Ed. 150, the Supreme Court had under review a statute of Michigan which levied an annual tax "upon the business of selling only brewed or malt liquors at wholesale or retail, or at wholesale and retail," of $300; whereas, "upon the business of manufacturing brewed or malt liquors for sale," the tax was only $65. An agent in Michigan for a wholesale importer of liquor from Wisconsin was convicted in a Michigan state court under this statute for failure to pay the $300 tax; this conviction was affirmed by the highest court of the state (People v. Lyng, 74 Mich. 579, 42 N.W. 139), the case was brought to the Supreme Court on writ of error, and there the conviction was reversed. Thus here was the application of the same principle announced in Hinson v. Lott, but to different facts which disclosed undeniable discrimination against one shipping goods into a state, in favor of goods produced in that state. The

430

fact that in Lyng v. State of Michigan one of the taxes was a sales tax and the other a production tax was not the reason for declaring the entire act invalid. The reason was much more fundamental. It was that, when compared, the one was found to be discriminatory in relation to the other. In Hinson v. Lott the two taxes were likewise different, one was a sales tax, the other a production tax, and therefore the subject-matter was not the same, although the court treated the one as complementary to the other because in amount the one balanced the other. In the present case, since, instead of two taxes of equal amount, we find that the differential is vastly in favor of complainant, it is difficult to see any basis for the charge of discrimination.

The distinction between manufacture and commerce is real and fundamental. Coe v. Errol, 116 U.S. 517, 6 S.Ct. 475, 29 L.Ed. 715; Kidd v. Pearson, 128 U.S. 1, 9 S.Ct. 6, 32 L.Ed. 346; United States v. E. C. Knight Co., 156 U.S. 1, 15 S.Ct. 249, 39 L.Ed. 325. The possibility, or even certainty of exportation of a product or article from a state does not determine it to be in interstate commerce before the commencement of its movement from the state. Heisler v. Thomas Colliery Co., 260 U.S. 245, 43 S.Ct. 83, 67 L.Ed. 237; Champlin Refining Co. v. Corporation Commission, 286 U.S. 210, 52 S.Ct. 559, 76 L.Ed. 1062, 86 A.L.R. 403; Utah Power & Light Co. v. Pfost, 286 U.S. 165, 52 S.Ct. 548, 76 L.Ed. 1038; Chassaniol v. Greenwood, 291 U.S. 584, 54 S.Ct. 541, 78 L.Ed. 1004; Carter v. Carter Coal Co., 298 U.S. 238, 56 S.Ct. 855, 80 L. Ed. 1160. This being true, a state need not concern itself with what burdens, by way of taxation, may be added to the given article, by another state. See Kidd v. Alabama, 188 U.S. 730, 23 S.Ct. 401, 47 L.Ed. 669; Colgate v. Harvey, 296 U.S. 404, 56 S.Ct. 252, 80 L.Ed. 299, 102 A.L.R. 54.

A situation similar to that here presented arose in Duke Power Co. v. South Carolina Tax Commission (C.C.A.) 81 F.(2d) 513, and related cases, therein referred to. See S. C. Power Co. v. S. C. Tax Comm. (D.C.) 52 F.(2d) 515, affirmed 286 U.S. 525, 52 S.Ct. 494, 76 L.Ed. 1268. Id. (D.C.) 60 F.(2d) 528, affirmed Broad River Power Co. v. Query, 288 U.S. 178, 53 S.Ct. 326, 77 L.Ed. 685. There a South Carolina statute imposed two distinct taxes, one a production tax, and the other a sales tax. The former was a tax of five-tenths of a mill upon each Kilowatt hour of electric power sold within the state with provision for crediting against the sales tax the amount of the production or generation tax already paid to the state on the same current. It was argued that unless the sales tax was interpreted as intended to be applicable only on the net current delivered to the consumer, after station and line or system loss (which amounted to 20 per cent. of the current generated) had been sustained, it would be discriminatory against domestic power companies. In rejecting this contention, the court said [at page 520 of 81 F.(2d)]: "Little need be said with respect to the constitutional validity of the act, which was upheld by the Supreme Court in Broad River Power Co. v. Query, 288 U.S. 178, 53 S.Ct. 326, 77 L.Ed. 685, against attack under the Fourteenth Amendment. While the opinion of the Supreme Court deals with only two of the questions raised under the Fourteenth Amendment, the opinions of the lower court deal with a number of other questions raised under that amendment, and we refer to those opinions for a fuller expression of our views as to the interpretation and constitutionality of the act. See South Carolina Power Co. v. South Carolina Tax Comm. (D.C.) 52 F.(2d) 515; Id. (D.C.) 60 F.(2d) 528. The only difference in the constitutional argument made here and those presented in that case, is that it is now argued that the act as we have construed it discriminates against domestic power companies in that the sales tax imposed upon power brought into the state and sold, power sold by industrial plants, and power sold by municipalities, is measured by power actually delivered so that line or system loss is not taxed. The answer to this is that only the sales tax is imposed in the cases with which comparison is made; and it is manifestly no objection to a production tax that a sales tax is levied upon a different basis." Certiorari was denied by the Supreme Court (Duke Power Co. v. S. C. Tax Comm., 298 U.S. 669, 56 S.Ct. 834, 80 L.Ed. 1392).

It is true that in the course of this South Carolina litigation the decision was concerned primarily with the effect of the South Carolina statute upon the right to bring electric power into that state; and more particularly with whether the statute in this respect was in violation of the Fourteenth Amendment. However it ap-

pears that at least one of the power companies involved did transmit power to other states [S. C. Power Co. v. S. C. Tax. Comm. (D.C.) 52 F.(2d) 515, 517]; the question both of bringing current into and transmitting it out of the state was considered [Id. pages 523–525] and two different taxes were considered together, just as in the present case, and a similar credit for or deduction of the amount of the one from the other was under review, the court saying (Id. page 521): "Current which is produced within the state is taxed at the time of generation but is relieved of the sales tax, which is equal in amount, with the result that all current sold within the state whether produced there or brought in from another state, pays exactly the same tax."

 THIRD, THE FOURTEENTH AMENDMENT; THE TAX IN RELATION THERETO. Complainant's contention under the Fourteenth Amendment is twofold: (1) That the tax is excessive in relation to the cost of distillation, i. e., that it amounts to 20 per cent. of such cost; and (2) that since the statute in review levies a tax on spirits distilled "for beverage purposes" only, and since the ultimate use of the spirits for beverage or nonbeverage purposes may not be determined for years after the tax is laid and collected, and after considerable evaporation has occurred, its application depends upon an intention to do or to refrain from doing something in the indefinite future, a criterion too vague and uncertain. On both grounds, complainant argues that the necessity for due process and equal protection of the laws is violated. But we are not impressed with either of these arguments. As to the first, suffice it to point out that the fact that a tax is oppressive or excessive does not in itself violate the Fourteenth Amendment. Magnano v. Hamilton, 292 U.S. 40, 54 S. Ct. 599, 78 L.Ed. 1109; Fox v. Standard Oil Co., 294 U.S. 87, 55 S.Ct. 333, 79 L. Ed. 780; Stewart Dry Goods Co. v. Lewis, 294 U.S. 550, 55 S.Ct. 525, 79 L.Ed. 1054. The second argument is also without merit for the reason, among others, that there is no showing that complainant holds other than a permit to distill alcohol for beverage purposes only. Thus, there is no showing that complainant can be classed as a distiller of spirits for other than beverage purposes, or that its product falls, or will fall, into a different taxable class. Indeed, the proviso in section 41B for credit of the 5-cent manufacturer's tax against the tax on sales imposed by section 37 does not become operative until the liquors are sold or delivered as alcoholic beverages by the manufacturer or wholesaler to the retailer; and thus it becomes all the more clear that the proviso operates as a deduction from the sales tax, rather than as a discriminatory exemption from the manufacturer's tax.

For these reasons, the bill of complaint must be dismissed.