## CHASSANIOL *v.* CITY OF GREENWOOD.

No. 428. Argued February 6, 1934.—Decided March 12, 1934.

*Mr. Edward W. Smith,* with whom *Messrs. Sam C. Cook, Marcellus Green,* and *Garner W. Green* were on the brief, for appellant.

*Messrs. J. A. Lauderdale* and *A. H. Bell,* with whom *Mr. J. A. Tyson* was on the brief, for appellee.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

The City of Greenwood, Mississippi, laid by ordinance, in 1931 and in 1932, a tax " upon every person engaged in the business of buying or selling cotton for himself " within the city. In each year a tax of $50 was assessed to Chassaniol. He paid it under protest; and duly applied for refund to the City Council, claiming that the tax was illegal, and that the ordinances and the statutes authorizing it as construed and applied were void, because they violate the commerce clause of the Federal Constitution. The City Council refused the refund. Its action in denying this claim under the Constitution was sustained by both the Circuit Court of Leflore County and by the Supreme Court of the State, 166 Miss. 848; 148 So. 781. Whether they erred in so holding is the only question presented for decision by this appeal.

Greenwood is a concentration point for long staple cotton and an active market for its purchase and sale. All of the cotton there dealt in is grown and ginned in Mississippi. It reaches the Greenwood warehouses, about 70 per cent. by rail, the rest by automobile, truck, or wagon. There, it is compressed substantially as described in *Federal Compress & Warehouse Co.* v. *McLean, ante,* p. 17.

Purchases and sales are made upon the market by transfer and delivery of receipts issued by the local warehouses under the United States Warehouse Act. The prices are governed largely by transactions on the cotton exchanges of New York, Chicago, New Orleans and Liverpool.

There are at Greenwood about 25 cotton buyers, each of whom, like Chassaniol, purchases and sells cotton for himself. The buyer becomes the absolute owner. He makes the profit or bears the loss. But when he buys he customarily has in hand and in mind orders or contracts for that particular grade, for immediate or future delivery in other states or countries to the extent of about 90 per cent., on the average, of all cotton purchased by him. The remaining 10 per cent., he buys because, as often happens, growers of cotton refuse to sell less than their whole lot; and the lot may include a quantity greater than, or some bales of a grade different from, that for which the buyer has orders or contracts. The surpluses so bought are called " overs." Sometimes the " over " is held by the buyer until he gets an order or contract on which it can be placed. Sometimes the " over " is sold to another buyer at Greenwood. And some of the cotton bought as an " over " changes ownership several times within the State. But eventually the " overs," like the rest of the cotton, are shipped in interstate or foreign commerce.

Chassaniol contends that all the cotton is in interstate or foreign commerce from the moment it leaves the gin for Greenwood, or at least from the moment it is purchased at Greenwood by the buyer. The argument is that already at that time the cotton is destined for ultimate shipment to some other state or country; and that to tax the occupation of the cotton buyer burdens interstate commerce, since the buyer at Greenwood is the instrumentality by which the interstate transaction is initiated. The business involved is substantially like that described in

*Federal Compress Co.* v. *McLean;* and the rule there declared must govern here. Ginning cotton, transporting it to Greenwood, and warehousing, buying and compressing it there, are each, like the growing of it, steps in preparation for the sale and shipment in interstate or foreign commerce. But each step prior to the sale and shipment is a transaction local to Mississippi, a transaction in intrastate commerce. Hence those engaged in performing any such local function may be subjected to an occupation tax, just as the property used, or processed, by them may be subjected to a property tax.

There is nothing in *Dahnke-Walker Milling Co.* v. *Bondurant,* 257 U.S. 282 or in *Lemke* v. *Farmers Grain Co.,* 258 U.S. 50, inconsistent with this conclusion. The regulations involved in those cases were found to impose a direct burden upon interstate commerce itself. *Stafford* v. *Wallace,* 258 U.S. 495, is also in harmony with the rule here applied. See *Minnesota* v. *Blasius,* 290 U.S. 1, 7–8.

*Affirmed.*