**EL PASO ELECTRIC CO. v. ELLIOTT,**
Regional Director, et al.

No. 310.

District Court, W. D. Texas, El Paso
Division.
June 10, 1936.

Baker, Botts, Andrews & Wharton, of Houston, Tex., and Brown & Brooke, of El Paso, Tex., for complainant.

A. Norman Somers, of Washington, D. C., and Walter S. Howe, Asst. U. S. Atty., of El Paso, Tex., for Board, its members, and defendants Elliott, Mueller, and Phillips.

**82**

Karl Mueller, of Fort Worth, Tex., for defendants Elliott, Mueller, and Phillips.

Joseph M. Nealon, of El Paso, Tex., for defendant Ingram.

U. S. Goen, of El Paso, Tex., for interveners N. Kaufman and others.

BOYNTON, District Judge.

In equity. Suit brought by the El Paso Electric Company, complainant herein, against Edwin A. Elliott, individually and as Regional Director of the National Labor Relations Board for the Sixteenth Region, Philip G. Phillips, individually and as trial examiner, under appointment of the National Labor Relations Board, Karl H. Mueller, individually and as attorney of the National Labor Relations Board, J. W. Madden, John M. Carmody, and Edwin S. Smith, as members of the National Labor Relations Board, against said Board, agents and representatives thereof, and against W. L. Ingram, individually, vice president of the International Brotherhood of Electrical Workers, and others, praying for issuance of injunction restraining said Regional Director, attorney, trial examiner of said National Labor Relations Board, and members of said Board, and said Board, and agents and representatives of said Board, from conducting hearings on charges and complaints filed by said Board, its agents or representatives, acting under the National Labor Relations Act, approved July 5, 1935 (29 U.S.C.A. §§ 151–166), and said Ingram, alleging in complainant's second amended bill, as amended, the occasioning of irreparable injury and damages, as result of such actions, hearings, and attempted hearings, and the invalidity, unconstitutionality, of said National Labor Relations Act, and for damages as to defendant Ingram; all of said defendants having appeared and answered herein.

■ The right of labor to organize, and of employees individually or acting through organization or a union to exercise any and all peaceable means and influences, practically any and all means free from the exercise of intimidation or violence, to accomplish increase of wages, affecting hours of work, bargaining collectively or individually, and all conditions affecting their work and working conditions, has long been recognized and upheld in law, as declared and set forth in opinion of the Supreme Court of the United States in the case of Adair v. United States, 208 U.S. 161, 166–180, 28 S.Ct. 277, 52 L.Ed. 436, 13 Ann.Cas.

764, and other decisions of Supreme Court of the United States to the same effect; the court in the Adair Case, supra, 208 U.S. 161, at pages 172 and 173, 28 S.Ct. 277, 279, 52 L.Ed. 436, 13 Ann.Cas. 764, stating, in part, as follows: "It was the right of the defendant to prescribe the terms upon which the services of Coppage would be accepted, and it was the right of Coppage to become or not, as he chose, an employee of the railroad company upon the terms offered to him. Mr. Cooley, in his treatise on Torts, p. 278, well says: 'It is a part of every man's civil rights that he be left at liberty to refuse business relations with any person whomsoever, whether the refusal rests upon reason, or is the result of whim, caprice, prejudice, or malice. With his reasons neither the public nor third persons have any legal concern. It is also his right to have business relations with anyone with whom he can make contracts, and, if he is wrongfully deprived of this right by others, he is entitled to redress' "— such being the existence of the common law, as declared and announced in said decisions, unaffected by statutory law, long prior to the enactment of the National Labor Relations Act, approved July 5, 1935.

■ The court finds: That the defendant Edwin A. Elliott was duly appointed and acting Regional Director for the Sixteenth Region, defendant Karl H. Mueller, attorney for said Regional District, and Philip G. Phillips as trial examiner, under appointment of the National Labor Relations Board as such on or about September 17, 1935, under and in accordance with the terms and provisions of said act approved July 5, 1935. That the complaint prepared and filed by Edwin A. Elliott as such Regional Director, based upon affidavits and data furnished him by defendant W. L. Ingram, was filed by said Elliott in his capacity acting as such Regional Director, as agent of and under directions of the National Labor Relations Board. That, at the hearing on such complaint and charges so filed by Edwin A. Elliott, as Regional Director, acting as the representative of the National Labor Relations Board, and under appointment aforesaid, wherein it is charged that complainant was guilty of unfair labor practices, and in denying right of collective bargaining with its employees and other charges as set forth in complaint so filed by Edwin A. Elliott on the 8th day of November, 1935, and at the hearing held thereon at El Paso, Tex., commencing No-

vember 18, 1935, and continuing until November 26, 1935, in connection with which the defendant Karl H. Mueller appeared and conducted examination of witnesses and defendant Philip G. Phillips presided as trial examiner, all under appointment of the National Labor Relations Board, the court finds that the defendant Edwin A. Elliott, as such Regional Director, and also the defendant Karl H. Mueller, and the defendant Philip G. Phillips, each and all, acted in good faith in the performance of their official duties, in their respective capacities, under appointment of the National Labor Relations Board, under and in accordance with terms and provisions of said act, aforesaid, and that neither the said defendant Edwin A. Elliott, defendant Karl H. Mueller, or defendant Philip G. Phillips, entered into any agreement or conspiracy with defendant W. L. Ingram to perform any wrongful act, or any agreement, conspiracy, or confederation with defendant W. L. Ingram, or each other, or any one else, to perform the acts of conspiracy, understanding, and agreement with one another, as in complainant's second amended bill, as amended, alleged, or perform any wrongful act, in bad faith, against complainant, but in all things done and performed by said defendants Elliott, Mueller, and Phillips they were acting in good faith in performance of their respective duties, as same appeared to them should be performed, as officials of and representatives of said National Labor Relations Board. Hence no injunction will be granted or issued herein against either of said defendants Edwin A. Elliott, Karl H. Mueller, and Philip G. Phillips, individually.

While there is much evidence tending to show, to warrant the court in making a finding to such effect, that the defendant W. L. Ingram, vice president of the International Brotherhood of Electrical Workers, by his conduct and acts, contributed much to foment discontent and discord amongst employees of complainant El Paso Electric Company in his acts and efforts to organize certain employees of complainant into becoming members of a local union, craft unionism of electrical workers, to join Local Union No. 585 of the International Brotherhood of Electrical Workers, and into five units or departments, making demand upon complainant for recognition of such union, demand for a closed shop and collective bargaining with said Local 585, as the representative of such five departments, embracing some 60 or more employees only of the total number of some 460 employees of complainant, and in disregard of the rights of nonunion employees, members of what is known and designated as "Employees Representation Plan" opposed to such union, Local 585, and membership in any union or organization of the International Brotherhood of Electrical Workers, nevertheless the court does not find that said defendant W. L. Ingram in all of his said activities, some of which are perhaps susceptible of criticism, entered into any agreement, confederation, or conspiracy with defendant Edwin A. Elliott, or the other defendants, of the character as in complainant's second amended bill, as amended, alleged. It takes two or more to form a conspiracy, and, while the facts developed on trial of the cause might be held as showing defendant W. L. Ingram ready and willing to enter into an agreement, confederation, and conspiracy with the defendant Edwin A. Elliott, or other defendants, as in said amended bill, as amended, alleged, the court holds that the facts are insufficient to show that any of these other defendants entered into any such agreement or conspiracy with defendant W. L. Ingram to accomplish the purposes sought by him as in said pleadings alleged. Therefore no injunction will be issued herein as against said defendant W. L. Ingram as prayed for by complainant.

This brings the court to the real and important issues and questions now regarded and held by the court as directly involved in this controversy, viz.: That of complainant's application for issuance of injunction enjoining members of the National Labor Relations Board, said Board, its agents and representatives, from resuming holding and conducting of a hearing, or hearings, on complaint filed against complainant company, now pending or to be hereafter filed, charging complainant with unfair labor practices, refusal to bargain collectively with a selected unit, organized craft of certain of its employees, failure to call or consent to election of a representative for bargaining purposes by a certain unit or units of its employees, on the ground that the National Labor Relations Act is unconstitutional, unwarranted exercise of power by Congress, in the enactment of such act, beyond the powers vested in the Congress of the United States by the people, as declared and embraced in terms and provisions of the Constitution of the United States.

The first charges and complaint against complainant company filed by Edwin A, Elliott, Regional Director, acting under direction of and for the National Labor Relations Board, charging unfair labor practices by complainant company, and failure to call or consenting to call of election amongst employees of certain craft units, employees of said company, and refusing to enter into collective bargaining, were filed on the 8th day of November, 1935, and a hearing begun and held in the city of El Paso on November 18, 1935, and continued until November 26, 1935. A large volume of testimony was introduced, when transcribed making something over 1,200 pages, and such hearing was evidently but commenced when the same was discontinued, by consent, by reason of filing by complainant of bill in equity herein, praying for issuance of temporary injunction restraining further prosecution of such hearing; said Philip G. Phillips, being appointed by the National Labor Relations Board as trial examiner, presiding at such hearing, and Karl H. Mueller acting as attorney, under appointment of said Board.

On December 12, 1935, by order of the National Labor Relations Board, entered at Washington, D. C., said further proceedings on the charges filed, as aforesaid, were withdrawn to, and taken charge of by, the National Labor Relations Board, for such further action and at such time as said Board might elect; certain of said charges being at said time quashed by the Board, but others left remaining. On the 24th day of April, 1936, said proceedings were renewed by the National Labor Relations Board by the filing of charges against complainant, El Paso Electric Company, under the terms of said act, of nature and character as set out in complaint issued by the National Labor Relations Board on said date, similar in nature and phraseology as the charges so filed by defendant Edwin A. Elliott, as Regional Director as aforesaid, on November 8, 1935, a copy of which last complaint is attached to and made a part of complainant's motion to call up application for temporary injunction, and being Exhibit A attached to said motion, filed in this court on May 7, 1936; said charges being summarized and set forth in paragraph 13 of said complaint, reading as follows: "The aforesaid acts of the respondent as set forth in paragraphs 4 to 11 inclusive herein constitute unfair labor practices affecting commerce within the meaning of section 8, subdivisions (1), (2), and

(5) and section 2, subdivisions (6) and (7) of the National Labor Relations Act [29 U.S.C.A. § 158, subds. 1, 2, 5, and § 152, subds. 6, 7]."

Complainant company was served with copy of notice of such charges and to appear and answer at a hearing to be had in the city of El Paso, commencing on the 7th day of May, 1936, and Walter Wilbur was appointed by the Board as trial examiner to preside at such hearing, and Leonard S. Janofsky as attorney. Such hearing was commenced on the 7th day of May, 1936, and then discontinued awaiting action of this court on application for injunction herein.

It is urged by counsel for members of the National Labor Relations Board and said Board and defendants Elliott, Mueller, and Phillips that question, or questions, as to invalidity and unconstitutionality of the National Labor Relations Act cannot be raised and urged in an equity proceeding, such as the case at bar, for issuance of injunction against such defendants, unless it first be shown, by competent evidence, that complainants have been occasioned irreparable damages, substantial loss of a nature recognized in law, as result of hearing, or hearings, conducted by the National Labor Relations Board on charges filed against complainant, and hearings had thereon by said Board, or its agents and representatives, under and in accordance with provisions of such National Labor Relations Act; further, that complainant's application for issuance of injunction herein against members of the National Labor Relations Board, said Board, its agents and representatives, is prematurely brought, is wanting in equity, and should be dismissed.

By testimony offered and admitted herein, it is shown that the holding and conducting of the hearing by the National Board, or its duly appointed representatives and agents, held and conducted at El Paso, commencing November 18, 1935, as aforesaid, called for the production of a number of witnesses, employees of complainant company, books, and documentary records of said company, occasioned interruption of its business, dissension and discord amongst its employees, affecting the "good will" and standing of the company with its employees and before the public, much expense, and substantial loss to complainant company. All of this is threatened, and the court has a right to infer, and so finds, will follow by the resumption and continuance, fur-

ther prosecution by the Board, of hearing on the charges filed April 24, 1936, and hearing commenced May 7, 1936, as aforesaid, causing complainant substantial loss, irreparable injury, and damages, entitling and warranting complainant to institute and maintain this action in equity herein, questioning the validity, constitutionality, of the National Labor Relations Act, and praying for issuance of injunction to restrain further hearings and procedure on complaints instituted and filed against complainant by the National Labor Relations Board, its agents or representatives. The court holds the action herein as not prematurely brought. Carter v. Carter Coal Co. et al., 56 S.Ct. 855, 80 L.Ed. ——, decision rendered by Supreme Court of the United States May 18, 1936; Pierce v. Society of Sisters, 268 U.S. 510, 535, 536, 45 S.Ct. 571, 69 L.Ed. 1070, 39 A.L.R. 468; Terrace v. Thompson, 263 U.S. 197, 215-216, 44 S. Ct. 15, 68 L.Ed. 255; Swift & Co. v. United States, 276 U.S. 311, 325, 48 S.Ct. 311, 72 L.Ed. 587; Euclid v. Ambler Co., 272 U.S. 365, 386, 47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016; City Bank Farmers' Trust Co. v. Schnader, 291 U.S. 24, 34, 54 S. Ct. 259, 78 L.Ed. 628; Dallas Joint Stock Land Bank v. Davis et al., United States Circuit Court of Appeals for Fifth Circuit, 83 F.(2d) 322, decided May 5, 1936.

The testimony shows: That the main power plant, known and designated as the Rio Grande plant of the complainant, El Paso Electric Company, is situated in the state of New Mexico (when built erected on land then embraced in the state of Texas, but by change of state boundary line by decision in controversy between the state of New Mexico and the state of Texas held to be in the state of New Mexico), at a point in the state of New Mexico just north of the Rio Grande river across the state line from the state of Texas, where the chief electrical energy of complainant company is produced and manufactured, though a small part of the electrical energy used by complainant company is created, produced, and manufactured at the Santa Fé Street station, in the city of El Paso, in the state of Texas. That a portion of the electrical energy so created, produced, and manufactured in said Rio Grande plant, after first passing through transformers, is then transmitted therefrom and carried to the city of El Paso, in the state of Texas, over two high-tension power lines running from said plant so situated in the state of New Mexico across the state line into the city of El Paso, where the electrical current so transmitted, is there, in the city of El Paso, in the state of Texas, passed through other transformers, and then distributed to private consumers; also furnishes electrical energy used for operation of street cars, street car lines, or system in the city of El Paso, busses, etc., owned and operated by complainant company, and furnishes electric lights and power to private consumers in the city of El Paso; also furnishes electrical energy, delivered at the international boundary line, whereby a street car line or loop is operated running from center of the international boundary line into the town of Juarez, located in the Republic of Mexico, and return to center of the international boundary line, owned and operated by a corporation other than complainant company. A high-tension power line also runs from said Rio Grande plant across the state line of New Mexico into the state of Texas, across a point of the state of Texas into the state of New Mexico, carrying and transmitting electrical energy produced, created, and manufactured at said Rio Grande plant to points located in the state of New Mexico.

It it held that the creation, production, and manufacture of electrical energy is one act, occurring at the point of creation, production, or manufacture, which is local, intrastate; that its transmission from such point of production and manufacture is another act, in its character interstate, in so far as its transmission over transmission lines across a state line from, viz. the state of New Mexico into the state of Texas.

The Supreme Court of the United States, in a unanimous opinion rendered in the case of Utah Power & L. Co. v. Pfost, 286 U.S. 165, 178-190, 52 S.Ct. 548, 551, 76 L.Ed. 1038, in discussing facts in said case similar in character to those involved in the case at bar, says:

"In the light of what follows, we find it unnecessary to state or consider the claims of the parties as to the effect of the interposition of the transformer between the generator and the places of consumption.

"From the foregoing greatly abbreviated but, for present purposes, we think sufficient statement of the views of the respective parties, it is apparent that in the last analysis the question we are called upon to

solve is this: Upon the facts of the present case, is the generation of electrical energy, like manufacture or production generally, a process essentially local in character and complete in itself; or is it so linked with the transmission as to make it an inseparable part of a transaction in interstate commerce? From the strictly scientific point of view, the subject is highly technical; but in considering the case, we must not lose sight of the fact that taxation is a practical matter, and that what constitutes commerce, manufacture, or production is to be determined upon practical considerations.

"Electrical energy has characteristics clearly differentiating it from the various other forms of energy, such as chemical energy, heat energy, and the energy of falling water. Appellant here, by means of what are called generators, converts the mechanical energy of falling water into electrical energy. Thus, by the application of human skill, a distinct product is brought into being and transmitted to the places of use. The result is not merely transmission; nor is it transmission of the mechanical energy of falling water to the places of consumption; but it is, first, conversion of that form of energy into something else, and, second, the transmission of that something else to the consumers. While conversion and transmission are substantially instantaneous, they are, we are convinced, essentially separable and distinct operations. The fact that to ordinary observation there is no appreciable lapse of time between the generation of the product and its transmission does not forbid the conclusion that they are, nevertheless, successive and not simultaneous acts.

"The point is stressed that in appellant's system electricity is not stored in advance, but produced as called for. The consumer in Utah, it is said, by merely turning a switch, draws directly from the water fall in Idaho, through the generating devices, electrical energy which appears instantaneously at the place of consumption. But this is not precisely what happens. The effect of turning the switch in Utah is not to draw electrical energy directly from the water fall, where it does not exist except as a potentiality, but to set in operation the generating appliances in Idaho, which thereupon receive power from the falling water and transform it into electrical energy. In response to what in effect is an order, there is production as well as transmission

of a definite supply of an article of trade. The manufacture to order of goods and their immediate shipment to the purchaser furnishes a helpful analogy, notwithstanding the fact that there are successive steps from order to delivery are open to physical observation, while here the succession of events is chiefly a matter of inference; although inference which seems unavoidable. The process by which the mechanical energy of falling water is converted into electrical energy, despite its hidden character, is no less real than the conversion of wheat into flour at the mill."

Other decisions to same effect as Utah Power & L. Co. v. Pfost, supra; Carter v. Carter Coal Co. et al., supra; Chassaniol v. Greenwood, 291 U.S. 584, 587, 54 S.Ct. 541, 78 L.Ed. 1004; Cornell v. Coyne, 192 U.S. 418, 428–429, 24 S.Ct. 383, 48 L.Ed. 504; United States v. E. C. Knight Co., 156 U.S. 1, 13, 15 S.Ct. 249, 39 L.Ed. 325.

In the concurring opinion by Chief Justice Hughes in the case of Carter v. Carter Coal Co. et al., supra, more commonly known and designated as the Guffey Coal Act Case, decided May 18, 1936, and consolidated cases, Chief Justice Hughes says, in part:

"That the constitutional power of the federal government to impose this penalty must rest upon the commerce clause, as the government concedes; that production—in this case mining—which precedes commerce is not itself commerce; and that the power to regulate commerce among the several states is not a power to regulate industry within the state.

"The power to regulate interstate commerce embraces the power to protect that commerce from injury, whatever may be the source of the dangers which threaten it, and to adopt any appropriate means to that end. Second Employers' Liability Cases (Mondou v. N. Y., N. H. & H. R. Co.), 223 U.S. 1, 51, 32 S.Ct. 169, 56 L.Ed. 327, 38 L.R.A.(N.S.) 44. Congress thus has adequate authority to maintain the orderly conduct of interstate commerce and to provide for the peaceful settlement of disputes which threaten it. Texas & N. O. R. Co. v. Railway & S. S. Clerks, 281 U.S. 542, 570, 50 S.Ct. 427, 74 L.Ed. 1034. But Congress may not use this protective authority as a pretext for the exertion of power to regulate activities and relations within the states which affect interstate commerce only indirectly. Otherwise in view of the multitude of indirect effects Congress in its dis-

cretion could assume control of virtually all the activities of the people to the subversion of the fundamental principle of the Constitution. If the people desire to give Congress the power to regulate industries within the state, and the relations of em-ployers and employees in those industries, hey are at liberty to declare their will in he appropriate manner, but it is not for the Court to amend the Constitution by judicial decision."

And again: "(2) The provision permits a group of producers and employees, according to their own views of expediency, to make rules as to hours and wages for other producers and employees who were not parties to the agreement. Such a provision, apart from the mere question of the delegation of legislative power, is not in accord with the requirement of due process of law which under the Fifth Amendment dominates the regulations which Congress may impose. (3) The provision goes beyond any proper measure of protection of interstate commerce and attempts a broad regulation of industry within the state."

Said National Labor Relations Act, § 1 (29 U.S.C.A. § 151), under heading "Findings and Policy," reciting the intent and purpose of said act, provides as follows:

"Section 1. The denial by employers of the right of employees to organize and the refusal by employers to accept the procedure of collective bargaining lead to strikes and other forms of industrial strife or unrest, which have the intent or the necessary effect of burdening or obstructing commerce by (a) impairing the efficiency, safety, or operation of the instrumentalities of commerce; (b) occurring in the current of commerce; (c) *materially affecting, restraining, or controlling the flow of raw materials or manufactured or processed goods from or into the channels of commerce, or the prices of such materials or goods in commerce; or (d) causing diminution of employment and wages in such volume as substantially to impair or disrupt the market for goods flowing from or into the channels of commerce.*" (Court's italics.)

Said act shows it to be the purpose and intention to affect and regulate, as therein recited, raw materials or manufactured articles *after* they have ceased to be in commerce, as commerce between the states, or *prior* to their being shipped in interstate commerce or being in commerce within the

contemplation of either the "Interstate Commerce Clause" or "Commerce Clause" of the Constitution of the United States (article 1, § 8, cl. 3).

■ As evidencing the intent and expressed purpose of said act as bearing upon and to prevent what are termed "unfair labor practices" within the meaning of said act, it is expressly provided in same (section 10 (a), 29 U.S.C.A. § 160 (a), under the heading "Prevention of Unfair Labor Practices": "Sec. 10. (a) The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 8 [section 158]) affecting commerce. This power shall be exclusive, and shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, code, law, or otherwise"—thus expressly affecting relations between employers and employees in matters purely local, a domestic relation, purely intrastate, in violation of the Tenth Amendment to the Constitution of the United States.

■ Same would have the effect to vitiate, set aside, and hold for naught the "Employees' Representation Plan" and agreement entered into August 25, 1934, by in excess of 300 nonunion employees of complainant company, with complainant, out of the total number of not to exceed 460 employees of complainant company, to continue in effect for a period of two years, and from year to year thereafter until terminated, as in subdivision 2 of article 7 of such agreement provided; after said two-year period to be a yearly contract subject to termination by either party as in said subdivision 2 of article 7 of said agreement provided.

Article 1, entitled "Purpose," of said employees' representation plan reads as follows: "The employees of the El Paso Electric Company, in order to form an organization for the purpose of promoting closer relations between the employees of the various departments of the company and between the employees and the Management, to provide a method for the prompt settlement of any differences that may arise, and to provide a means whereby employees shall have a method of bargaining collectively on matters relating to working conditions, hours of labor, wages, safety and other matters of mutual interest, do hereby establish this Employees' Representation Plan." Then following said plan is set forth in detail.

It is held by the court that, under and by virtue of said employees' representation plan and agreement between complainant and the said employees, parties to said agreement aforesaid, a contract exists, property rights acquired that are immediately threatened, in imminent danger by reason of the filing of said complaints aforesaid, and action by the National Labor Relations Board as aforesaid, in violation of the Fifth Amendment, "Without Due Process of Law" clause, of the Constitution.

As further evidencing how far-reaching is said act, reference is here made to subdivision 3 of section 2 of the act (29 U.S. C.A. § 152 (3), under the heading "Definitions," which provides as follows:

"(3) The term 'employee' shall include any employee, and shall not be limited to the employees of a particular employer, unless the act [chapter] explicitly states otherwise, and shall include any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment, *but shall not include any individual employed as an agricultural laborer, or in the domestic service of any family or person at his home, or any individual employed by his parent or spouse.*" (Court's italics.)

The testimony shows: That on the early morning of February 27, 1936, about 4 a. m., members of Local Union 585 of International Brotherhood of Electrical Workers, some 60 employees of complainant, went on a strike, and that immediately prior to or at time of strike of said employees numerous acts of "sabotage" were committed at the Rio Grande plant of complainant company, serious in character, and that, following the occurrence of the strike of said 60 employees, as aforesaid, depredations were committed on various electrical lines and properties of complainant company, the cutting of its poles, and interruption of service, occasioning much loss, and that discord and strife occurred in many instances between members of said Local 585, out on strike, and employees of complainant company satisfied with their employment and continuing at their work for the company, most of whom were non-union employees, though some were union employees. That following said strike complainant company discharged such striking employees, about 60 in number, and issued to them final pay checks up to date, with notice of their discharge. That only from 4 to 6 employees of complainant company are engaged in maintenance and upkeep of its transmission lines from the Rio Grande plant to the city of El Paso or the lines transmitting electrical current to the Mesilla Valley Electric Company, which electrical energy passes through transformers before transmission or distribution in the state of New Mexico, and at no time exceeding 12 employees so engaged. That since about the first of the month of May, 1936, there has occurred no injury or destruction to complainant's lines, poles, and properties or interruption of its service to the public.

364 employees of complainant, out of a total of 460 employees, in all, of complainant, have filed petition of intervention herein, joining complainant in prayer for issuance of injunction against the defendants, members of said National Labor Relations Board, as aforesaid, and its agents and representatives, alleging satisfaction with existence of interveners' employment, as employees of complainant, and that they be permitted to continue same and the enforcement and carrying out of said "Employees' Representation Plan" and agreement, as aforesaid, free from any action by the National Labor Relations Board, its agents and representatives, and protesting against the influences of members of the organization of the International Brotherhood of Electrical Workers and members thereof, the members of said Local 585 of said International Brotherhood of Electrical Workers, and that members of the latter, now out on a strike and discharged by complainant, be not restored to employment of complainant, El Paso Electric Company, as detrimental to the rights and interest of such employees, interveners herein; all of said allegations of fact being supported by evidence and testimony offered on this hearing, and the court finds as a matter of fact same to exist.

As to complaint charging "unfair labor practice" against complainant, filed by the Board: The testimony shows that prior to filing of such complaint, or complaints, before the Board, charging complainant with unfair labor practices under section 8 of the National Labor Relations Act (29 U.S.C.A. § 158), in refusal to deal with Local Union 585 of International Brotherhood of Electrical

Workers as a collective bargaining agency, or its representative, complainant had refused to do so, contending amongst other grounds urged, that it could not do so under and by reason of the existence of agreement with its employees under and in accordance with terms and provisions of the "Employees' Representation Plan" agreement, hereinbefore referred to.

Upon said electrical energy, so produced and manufactured at complainant's Rio Grande plant, it first passing through transformers at such plant, following which transmitted over high-tension power lines across the state line into Texas to the city of El Paso, only a few miles distant, where it in the city of El Paso in turn passes through transformers before distribution in the city of El Paso, thereby an act of intrastate, and then distributed in said city of El Paso aforesaid down the valley to various towns and communities in the county of El Paso and state of Texas, and to the town of Sierra Blanca, in Hudspeth county, Tex., same not constituting commerce between the states; the complainant having no competition in such electrical business in this territory and portion of the state of Texas.

If deemed essential, and space permitted, the court might direct more detailed attention to matters held to constitute "unfair labor practice for an employer," as set forth in each of subdivisions (1), (2), (3), (4), and (5) of section 8 of said act (29 U.S.C.A. § 158 (1–5), more especially subdivision (3), precluding an employer from making an agreement with a labor organization (not established, maintained, or assisted by any action defined in said act as an unfair labor practice), collective bargaining, etc., and requiring collective bargaining with certain units, or their representatives, bargaining with a majority of a certain unit without regard to the minority, the unilateral character of said act, numerous strict requirements of the employer and no requirements of employees, and providing, in section 13 (29 U.S.C.A. § 163), "Nothing in this act [chapter] shall be construed so as to interfere with or impede or diminish in any way the right to strike," in its effect amounting to compulsory arbitration by the employer, and other provisions held by the court not embraced in the power vested in Congress under and by virtue of either the "Interstate Commerce Clause" or "Commerce Clause," relating to commerce between the states.

The court will here refer to decision of Supreme Court of the United States in case of Carter v. Carter Coal Co. et al., 56 S. Ct. 855, pages 862, 863, 80 L.Ed. ——, on question that suit at bar is not prematurely brought; pages 868, 869, of 56 S.Ct., 80 L.Ed. ——, holding that the possibility, or even certainty, of exportation of a product or article from a state does not determine it to be in interstate commerce before commencement of its movement from the state, and citing Heisler v. Thomas Colliery Co., 260 U.S. 245, 259, 260, 43 S.Ct. 83, 67 L. Ed. 237; pages 869, 870, of 56 S.Ct., 80 L.Ed. ——, that the word "commerce" is the equivalent of the phrase "intercourse for the purposes of trade"; page 870 of 56 S.Ct., 80 L.Ed. ——, showing that the acts in question do not constitute or come within the term "flow" of commerce between the states; pages 872, 873, of 56 S.Ct., 80 L.Ed. ——, that the power conferred upon the majority, in matter of "collective bargaining" in the Guffey Act (15 U.S.C.A. §§ 801–827), which is very similar to the National Labor Relations Act, in such particular as to collective bargaining, is, in effect, the power to regulate the affairs of an unwilling minority; that "This is legislative delegation in its most obnoxious form." In fact, the opinion in said case passes upon practically every serious question as to the constitutionality of an act as is involved in the questions at bar as to invalidity or unconstitutionality of the National Labor Relations Act; and the court in the case at bar is governed, controlled, and ruled by the rulings announced in said decision in said case of Carter v. Carter Coal Co. et al., supra.

Counsel for defendants further urge that the complainant is not entitled to maintain action in equity herein for issuance of an injunction against said National Labor Relations Board, its agents and representatives, because complainant has an adequate remedy at law provided under the terms and provisions of the National Labor Relations Act. It is held by the court that said act does not provide complainant with an adequate remedy at law, but by its terms and provisions, and powers granted, is violative of the Fifth Amendment and of complainant's rights, and does not provide complainant with procedure in "due process of law" to protect its rights. It is held that

the remedy, or remedies, provided by law, must be as complete and adequate as those afforded in equity in order to deprive a party of the right to proceed in equity. Where a statute, in this instance an act of Congress, is held by the court, as in this instance, to be invalid and unconstitutional *"in toto,"* the act falls, and, in falling, carries with it all remedies or attempted remedies as provided therein, in effect the same as if never enacted or in existence. Norton v. Shelby County, 118 U.S. 425, 441, 442, 6 S.Ct. 1121, 30 L.Ed. 178. The court in said opinion, on page 442, of 118 U.S., 6 S.Ct. 1121, 1125, says: "An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed."

By reason of the length of this opinion, the court has avoided reciting the numerous grounds and allegations set forth in complainant's second amended bill, as amended, which is very lengthy, and those contained and set forth in answers of respective defendants filed herein, regarding references herein made as sufficient to afford a clear understanding of the issues and matters involved in this case, and as such pleadings form a part of the record herein.

Summarizing: Held by the court that complainant, by pleading and evidence, has shown and established irreparable injury and damage occasioned by filing of the complaints by the National Labor Relations Board, charging "unfair labor practices" by complainant, and other acts, under and by virtue of definitions, terms, and provisions of said National Labor Relations Act, the conducting of hearings in connection therewith, and threatened prosecution of further hearings, substantial loss, and immediately threaten by continuation of such acts by defendants, members of said Board, said Board, its agents and representatives, and that complainant has no adequate remedy at law, and is entitled to maintain this action in equity, this court having jurisdiction of the subject-matter and parties, and that Congress in the enactment of said act exceeded the powers vested in Congress under either the "Interstate Commerce Clause" or "Commerce Clause" or any other clause of the Constitution of the United States, and is in violation of the Tenth Amendment and Fifth Amendment, respectively, of the Constitution, and on the grounds and for the reasons as hereinbefore set forth in this opinion and decision, and that said act is held to be unconstitutional *"in toto,"* and complainant entitled to injunction against defendants, members of said National Labor Relations Board, said Board, and its agents and representatives.

The constitutional questions here involved are of grave importance, seriously affecting the relations between employers and employees, a subject heretofore always regarded and held to be a domestic relation, local in its nature, intrastate, affecting many industries and occasioning discord amongst employees, unsettled labor and business conditions as to indirectly affect interests of the public, so far-reaching as to be of public concern. The same should be decided, and definitely so, at an early date, with as little delay as would seem reasonable, by decision of the Supreme Court of the United States, that under the Constitution and laws of the United States finally passes upon the question of constitutionality of an act of Congress. Hence this court has brought this case to hearing upon the merits, hearing of proof and decision based upon evidence, testimony of many witnesses, in an action on pleadings of complainant held to be sufficient to entitle it to maintain an action in equity herein, of which this court has jurisdiction of the subject-matter and parties, in which members of the National Labor Relations Board have answered and joined issue, instead of the court passing merely on technical questions of pleading that result only in further delay of determination of the real questions of such grave concern to laborers, employers, and, in fact, the public, in reaching decision by the Supreme Court of the United States on question of constitutionality, validity, of said National Labor Relations Act, also known and designated as the Wagner Act, approved July 5, 1935. Though the court is informed numerous proceedings have been instituted and decisions rendered on questions of pleading and procedure relating to complaints filed and hearings had by representatives of said Board as acting under and by virtue of said National Labor Relations Act, no case has reached the Supreme Court of the United States for decision to date, and it is now apparent cannot before the next term, October term, 1936, of said court, if at that time.

Since decision reached by the court in the case at bar and preparation of the aforesaid opinion and decision herein, but before announcement of same, the court is in receipt of typewritten copy of opinion of the Fifth Circuit Court of Appeals, rendered June 5, 1936, affirming dismissal of bill of complaint in the case of Bradley Lumber Co. v. National Labor Relations Board et al., 84 F.(2d) 97, for want of equity. Upon careful consideration of said opinion, which appears to have been based upon pleadings only, the court does not find that such decision is controlling or ruling upon this court with reference to matters involved in the case at bar; in which members of the National Labor Relations Board have answered and joined issue, while in the Bradley Case the members of said Board, and said Board, were held as not before the court, and the facts in the case at bar widely differ from those alleged in bill of complaint in the Bradley Case, and the case at bar has been fully developed, proof, affirmative testimony introduced, and decision here based upon a full hearing on the merits.

Hence decree will be entered herein in favor of defendants Edwin A. Elliott, Karl H. Mueller, and Philip G. Phillips individually, and dismissing said cause as to said defendants individually; further, that no injunction be issued herein against the defendant W. L. Ingram, and, as this disposes of all equitable action herein against said defendant W. L. Ingram, and the action for damages, if any, urged against said defendant Ingram is an action at law, the cause is here dismissed against said defendant W. L. Ingram, without prejudice to complainant's institution of suit and action at law for recovery of damages, if any, against said defendant. Defendants' motions to dismiss overruled. Injunction, permanent injunction, be issued against defendants J. W. Madden, John M. Carmody, and Edwin S. Smith, as members of the National Labor Relations Board, and said Board, Edwin A. Elliott, Karl H. Mueller, and Philip G. Phillips in their official capacities as agents and representatives of said Board, and any and all other agents and representatives of said Board.

Looking to appeal of this case, the court will request counsel for complainant to prepare and draft more specific and detailed findings of fact and conclusions of law herein, submit same to counsel for defendants for suggestions, and then present to the court as suggestion of findings of fact and conclusions of law to be filed by the court herein, supplementing the court's opinion and decision herein announced, separate and apart from same, in accordance with requirements of Equity Rule 70½ (28 U.S.C.A. following section 723).