# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 98-3594

_____

| | |
|---|---|
| United Waste Systems of Iowa, Inc.; | * |
| Central Disposal Systems, Inc., | * |
| | *   Appeal from the United States |
|         Appellants, | *   District Court for the |
| | *   Southern District of Iowa. |
|   v. | * |
| | * |
| Larry Wilson, in his official capacity as | * |
| the Director of the Iowa Department of | * |
| Natural Resources, | * |
| | * |
|         Appellee. | * |

_____

Submitted:  May 13, 1999
Filed:   September 7, 1999

_____

Before LOKEN, HANSEN, and MURPHY, Circuit Judges.

_____

HANSEN, Circuit Judge.

United Waste Systems of Iowa, Inc. (United Waste) and Central Disposal Systems, Inc. (Central Disposal) brought this action against the Iowa Department of Natural Resources (IDNR) in which they alleged that Iowa's solid waste disposal program violates the Commerce Clause of the United States Constitution.  See U.S.

Const. art. I, § 8, cl. 3. The district court[1] found no Commerce Clause violation and granted summary judgment in favor of IDNR. United Waste and Central Disposal appeal. We affirm.

# I.
# FACTS AND BACKGROUND

Iowa law requires "[e]very city and county of [the] state [of Iowa] [to] provide for the establishment and operation of a comprehensive solid waste reduction program . . . and a sanitary disposal project for final disposal of solid waste by its residents." Iowa Code § 455B.302 (1997). Iowa law further requires all cities and counties of the state of Iowa to file a comprehensive plan with the IDNR detailing how they will comply with section 455B.302. See Iowa Code § 455B.306(1). The comprehensive plan submitted by the city or county must include a description of the service area to be served. The comprehensive plan may not, however, "include a service area, any part of which is included in another comprehensive plan." Iowa Code § 455B.306(6)(e).

The IDNR interprets Iowa Code §§ 455B.302 and 455B.306 as granting cities and counties complete discretion to contract with landfill operators and garbage haulers. Cities and counties may choose to send all or a portion of their waste to an out-of-state facility. See Iowa Admin. Code r. 567-101.4 (1992). If the cities and counties elect to dispose of all or a portion of their waste within the state of Iowa, they must select a single landfill as a waste repository for the waste that will be disposed of in Iowa. Once the city or county designates a landfill for its in-state disposal needs, it must include this designation in its comprehensive plan that it

---

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

files with the IDNR pursuant to § 455B.306. The city or county then is permitted to dispose of its solid waste only at the landfill location designated in its comprehensive plan. Garbage haulers who contract with the city or county must transport the solid waste only to the landfill designated in the comprehensive plan. The state of Iowa forbids garbage haulers from transporting waste for a county or city to a facility not designated in that county's or city's comprehensive plan. Similarly, a landfill may not receive solid waste from a city or county that has not designated the landfill in its comprehensive plan.[2]

United Waste is a garbage hauling company with its principal place of business in Lake Mills, Iowa. Central Disposal is a waste disposal company, which operates a landfill near Lake Mills. Central Disposal's landfill receives waste from Iowa and Minnesota.

United Waste and Central Disposal filed a declaratory judgment action against the state of Iowa in which they alleged that IDNR's interpretation of Iowa Code §§ 455B.302 and 455B.306 violates the Commerce Clause of the United States Constitution as well as Iowa state law. Specifically, United Waste contends that the restrictions imposed by IDNR's interpretation infringes upon its freedom to choose the landfill destination for the solid waste that it hauls from the cities and counties. Central Disposal contends that IDNR's restrictions prevent it from receiving waste at its landfill from cities and counties that have not designated Central Disposal in their comprehensive plan. Both companies claim that IDNR's interpretation causes them to lose a substantial amount of business. Thus, they contend that IDNR's interpretation unduly burdens interstate commerce because,

_____

[2]Iowa law also requires landfill operators to file a comprehensive plan with the IDNR indicating which cities and counties have agreed to utilize their landfill. See Iowa Admin. Code r. 567-101.5 (1992).

absent the restriction, the two companies would purchase additional fuel, equipment, and supplies from out of state businesses.

The district court rejected the companies' Commerce Clause argument. The district court found that the benefits of IDNR's regulatory scheme are "readily apparent" and "substantially outweigh the interstate-commerce-expenditure reductions of one landfill." (Dist. Ct. Order at 2). The district court granted summary judgment to the state of Iowa on the Commerce Clause claim and dismissed the state law claims without prejudice for lack of jurisdiction. United Waste and Central Disposal appeal.

## II.
## DISCUSSION

We review de novo the district court's summary judgment determinations. See JN Exploration & Prod. v. Western Gas Resources, Inc., 153 F.3d 906, 909 (8th Cir. 1998).

## A.
### Interstate Commerce

The Commerce Clause of the United States Constitution grants Congress the power to regulate commerce between the states. U.S. Const. art. I, § 8, cl. 3. Implicit within the Commerce Clause is a negative or dormant feature that prevents individual states from regulating interstate commerce. See CTS Corp. v. Dynamics Corp. of Am., 481 U.S. 69, 87 (1987); Wabash, St. L. &. P. Ry. Co. v. Illinois, 118 U.S. 557, 577 (1886). In evaluating whether a challenged state regulation impermissibly infringes upon interstate commerce, a court first must determine whether the regulation even

-4-

affects interstate commerce. See Pike v. Bruce Church, Inc., 397 U.S. 137, 141-42 (1970).

The test for determining if a challenged regulation affects interstate commerce is by no means clear. The Supreme Court has upheld state regulatory schemes that impose a purely local burden or where the effect on interstate commerce is "at the most indirect and remote." Id. at 141. In Federal Compress & Warehouse Co. v. McLean, 291 U.S. 17, 21 (1934), and Chassaniol v. City of Greenwood, 291 U.S. 584, 587 (1934), the Supreme Court held that the warehousing and ginning of cotton were purely local activities and, therefore, a tax imposed on such an activity did not run afoul of the dormant Commerce Clause. In Wickard v. Filburn, 317 U.S. 111, 127-28 (1942), however, the Court held that the Commerce Clause permitted Congress to regulate a farmer's production of wheat even if the wheat was used purely for home consumption. The Court found that even though one farmer's production of wheat for home consumption could not implicate interstate commerce, the cumulative effect of home consumption of wheat by several farmers could alter the interstate market. See id. at 28-29. Following Wickard, the cumulative effects rationale became the test for sustaining legislation against attacks that Congress exceeded its power under the Commerce Clause. For example, in the 1960s, the Court employed the cumulative effects test when it upheld congressional civil rights legislation where the regulated activity, as it applied against single individuals or business entities, had no discernable effect on interstate commerce. See Katzenbach v. McClung, 379 U.S. 294, 300-01 (1964) (upholding Title II of the Civil Rights Act of 1964 by finding that racial discrimination at local restaurants burdened interstate commerce); Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 258 (1964) (finding that racial discrimination by local motels burdened interstate commerce). The Supreme Court's fairly recent decision in United States v. Lopez, where the Court held the Gun-Free School Zones Act of 1990 unconstitutional, represents the first significant judicial curtailment of the expansiveness of the cumulative effects test in nearly 60 years. See

514 U.S. 549, 561 (1995) (declining to rely on the cumulative effects cases because the criminal statute at issue had no relation to economic enterprise).

We note that Wickard, Katzenbach, Heart of Atlanta Motel, and Lopez involved challenges to Congress's express power to regulate under the Commerce Clause. As the instant case involves a challenge to a state regulation's impact on interstate commerce, we turn to the germinal case for evaluating legislation challenged under the dormant features of the Commerce Clause. In Pike, the Supreme Court held that an Arizona regulation affecting only goods that had not yet entered the stream of interstate commerce nevertheless implicated interstate commerce. Pike, 397 U.S. 140-42. The regulation burdened interstate commerce because it required companies to package cantaloupes in Arizona, rather than other states, before shipping the goods outside of Arizona. The Court premised its holding in part on the fact that the goods "were destined to be shipped to an ascertainable location [outside the state of Arizona] immediately upon harvest." Pike, 397 U.S. at 141. The Court in Pike did not overrule its prior decisions in McLean and Chassaniol. Rather, the Pike Court surmised that the regulations upheld in McLean and Chassaniol were based either on the fact that the tax was imposed before an interstate destination for the cotton was chosen or on the fact that the burden on interstate commerce was at most indirect. See Pike, 397 U.S. at 141. The latter rationale is applicable in the instant case.

The state of Iowa imposes a regulatory scheme that forces cities and counties to designate a landfill in a comprehensive plan. The designation requirement applies only to waste that will remain in the state of Iowa. The state of Iowa does not force cities and counties to contract with a particular landfill. Rather, the cities and counties are afforded complete discretion to contract with the landfill of their choice. Regardless of the designation scheme and the comprehensive plans, the cities and counties may send some or all of their waste to landfills located beyond the state's borders. If the city or county elects to dispose of any of its waste at an in-state facility, it may contract with any landfill in the state of Iowa. Once a city or county chooses an in-state landfill,

however, it must designate that landfill in its comprehensive plan and utilize only that landfill for its in-state disposal needs.

Cities and counties in Iowa are free to renegotiate their landfill contracts and alter their comprehensive plans to designate a different landfill. Hence, although a city or county that contracts with an Iowa landfill is bound to utilize only that Iowa landfill, the city or county has the option of amending its comprehensive plan and re-designating a different landfill. Under Iowa's rubric, interstate commerce does not even appear to be implicated. The cities and counties of Iowa are completely free to contract with United Waste and Central Disposal in the same manner that they may contract with any other provider of services. The two companies bear the competitive burden of convincing the cities and counties to utilize their services and designate Central Disposal in their comprehensive plan.

The companies argue that the regulation affects interstate commerce because it causes them to lose business (that they do not now have), and the alleged loss of future business restricts them from buying increased goods and services from out-of-state vendors. We find this argument barely believable. It appears to us that United Waste's and Central Disposal's alleged loss of business stems not from the regulation itself but from their failure to persuade the cities and counties of Iowa to do business with them and to designate Central Disposal's landfill in the comprehensive plans.[3] The

_____

[3]The Appellants' solicited landfill business through a form letter, which was sent to 49 municipalities in north central Iowa. (See Appellants' App. at 332-33.) The letter is not a model of modern sales and marketing techniques. As some of the responses indicate, the municipalities were offended by the rather presumptuous and high-handed tone of the appellants' overture. ("Unless we receive from your office a letter denying cooperation prior to Monday, July 21, 1997, we will include your community in our list of cooperating communities to be filed with the Iowa DNR as part of Central Disposal's comprehensive plan.") (Appellants' App. at 333.) The cities' responses included such statements as: "I find it rather arrogant of your company to include our community in

companies' assertion demonstrates, at best, only an attenuated effect on interstate commerce. If taken to an extreme, every state regulation would have some minimal effect on interstate commerce. In this case, we must conclude that the regulation's effect on interstate commerce is, at most, extremely attenuated, remote, incidental, and highly speculative. See Ben Oehrleins & Sons & Daughter v. Hennepin County, 115 F.3d 1372, 1387 (8th Cir.) ("Restrictions on the ability of companies, regardless of state origin, to process . . . waste [intrastate] may be relevant to the Commerce Clause issue") (emphasis added), cert. denied, 118 S. Ct. 629 (1997) and 118 S. Ct. 643 (1997).

## B.
## The Commerce Clause Inquiry

When evaluating a challenged regulation that impacts at least incidentally on interstate commerce, a court first must determine if the regulation fosters protectionist discrimination by favoring local businesses over out-of-state companies. See C&A Carbone, Inc. v. Town of Clarkstown, 511 U.S. 383, 392-94 (1994); Ben Oehrleins,

---

your comprehensive plan without a written request from us. I should not have to take the time to write a letter to fend off your companies [sic] actions, when we have never given your company the slightest indication that we would use your facility." (Letter from the City Clerk of Ventura, Iowa) (Appellants' App. at 343.) "I would like to know what gives your company the right to include our community in your comprehensive plan without a request from us to dispose of waste at your site. I should not have to write this letter denying cooperation with your landfill. We have never written, spoken or given any indication that we wanted to be part of your facility." (Letter from the City Manager of Hampton, Iowa) (Appellants' App. at 346.) A number of responses are identical and accuse the appellants of "trying to interfere with our existing contract." (See, e.g., Letter from City of Garner, Iowa) (Appellants' App. at 344.) Other responses invited the appellants to make a presentation at a future city council meeting. (See Letter from City Attorney of Luverne, Iowa) (Appellants' App. at 361.)

115 F.3d at 1383. If such protectionist discrimination exists, the regulation "is per se invalid, save in a narrow class of cases in which the [state] can demonstrate, under rigorous scrutiny, that it has no other means to advance a legitimate local interest." Carbone, 511 U.S. at 392. This case lacks the type of protectionist discrimination described in Carbone. Again, Iowa's regulation freely permits political subdivisions to send their waste to out-of-state facilities. The designation scheme is implicated only when the cities or counties choose to dispose of their waste within the state of Iowa. See Ben Oehrleins, 115 F.3d at 1387 (holding that a purely intrastate designation scheme does not discriminate against interstate commerce and is not per se invalid). Cf. Carbone, 511 U.S. at 389 (finding a burden on interstate commerce where the ordinance prevented out-of-state companies from obtaining access to the local markets). No aspect of the Iowa regulation evinces a purposeful or even an unintentional design to discriminate in favor of local businesses.

Iowa's system is an evenhanded regulatory scheme. When a challenged scheme "regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." Pike, 397 U.S. at 142; see also Huron Cement Co. v. Detroit, 362 U.S. 440, 443 (1960) ("Evenhanded local regulation to effectuate a legitimate public interest is valid unless . . . unduly burdensome on . . . interstate commerce.") In this case, the challenged regulation easily passes the Pike test. First, as we explained in Part II(A) of this opinion, any effect on interstate commerce is not more than incidental. Thus, the challenged regulation must be upheld as long as the incidental effect is not clearly excessive in relation to the public benefit. According to the state of Iowa, the regulation serves to (1) allow the state to track the destination of Iowa's waste, (2) allow cities and counties to control and operate safe landfills that comply with Iowa law, (3) allow cities and counties to maintain control of their waste, and (4) foster the collection of tipping fees that fund various state recycling and pollution hotline

programs.  (See Appellee's Br. at 27-28.)  Tracking and controlling in-state waste are valid and legitimate state objectives.

The companies argue that less restrictive alternatives exist that will accomplish Iowa's objectives.  The companies' argument suggests that we employ some type of heightened scrutiny in examining Iowa's regulation. Heightened scrutiny is appropriate, however, only if the challenged regulation's burden "bear[s] more heavily on interstate commerce than on local commerce."  National Paint & Coatings Ass'n v. City of Chicago, 45 F.3d 1124, 1131 (7th Cir.), cert. denied, 515 U.S. 1143 (1995). Otherwise, "there is no reason to require special justification."  Id. at 1132; see also Ben Oehrleins, 115 F.3d at 1383 ("A non-discriminatory state law . . . is subject to a less rigorous balancing test."). In this case, the effect of the regulation on interstate commerce is at most incidental and more likely nonexistent.  The local benefit easily outweighs any possible minimal effect on interstate commerce.  Tracking and controlling waste are legitimate state policy goals that should not be disturbed simply because two frustrated local companies have failed to convince Iowa's nearby cities and counties to patronize them.  We require far more compelling evidence of a real and un-imagined burden on interstate commerce before we will discard a state law that provides some form of local benefit.  See Middle South Energy, Inc. v. Arkansas Pub. Serv. Comm'n, 772 F.2d 404, 416 (8th Cir. 1985) (noting that the balancing test applied to facially neutral regulations "is far more deferential to the states"), cert. denied, 474 U.S. 1102 (1986).  Accordingly, we find that IDNR's interpretation passes the Pike test and, consequently, we uphold the regulation.[4]

_____

[4]IDNR also argues that its regulatory scheme should be upheld because it is a market share participant.  See White v. Massachusetts Council of Constr. Employers, Inc., 460 U.S. 204, 208 (1983).  IDNR did not raise this argument before the district court, and we decline to address arguments advanced for the first time on appeal.  See Carter v. Chrysler Corp., 173 F.3d 693, 704 n.9 (8th Cir. 1999).  More importantly, however, our decision in this case renders a market share participant evaluation unnecessary.

-10-

## C.
## State Law Claims

Finally, United Waste and Central Disposal raise state law challenges to IDNR's interpretation of the applicable provisions of the Iowa Code. The companies argue that in accordance with Iowa law, IDNR has no designation authority, IDNR's interpretation violates permit protections, and IDNR's designation scheme creates an absurd result. Having adjudicated the companies' federal law claims, the district court properly dismissed the companies' state law claims without prejudice. <u>See</u> 28 U.S.C. § 1367(c)(3).

## III.
## CONCLUSION

For the reasons stated herein, we affirm the judgment of the district court.

A true copy.

      Attest:

           CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-