## UNITED STATES v. GOSHO CO., Inc. (two cases).

Circuit Court of Appeals, Fifth Circuit.
January 24, 1928.

Nos. 5201, 5202.

**Commerce ⬅77—Cotton stopped at seaport for recompression and sorting held moving in export shipment, not subject to transportation tax (Const. art. 1, § 9).**

Where lots of cotton purchased by an exporting company at interior points consisted of different grades, but all was purchased for export, and was in fact export, its temporary stoppage at the seaport for recompression and sorting for appropriation to different sale contracts, did not interrupt the continuity of its movement, which was an export movement from its initial shipment, and under Const. art. 1, § 9, cannot be subjected to internal revenue tax.

In Error to the District Court of the United States for the Northern District of Texas; James C. Wilson, Judge.

Actions at law by the Gosho Company, Inc., against the United States. Judgments for plaintiff, and the United States brings error. Affirmed.

Norman A. Dodge, U. S. Atty., of Fort Worth, Tex., T. H. Lewis, Jr., Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (C. M. Charest, General Counsel, Bureau of Internal Revenue, of Washington, D. C., on the brief), for the United States.

Leroy A. Smith, of Fort Worth, Tex., for defendant in error.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

FOSTER, Circuit Judge. Defendant in error, plaintiff below, paid under protest transportation taxes aggregating $13,595.98, imposed by the Revenue Act of 1918 (Comp. St. § 6336⅛A et seq.), on various shipments of cotton from interior Texas points to Galveston. After vainly trying to obtain a refund, these two suits were brought in the District Court, and judgment was rendered in its favor. The cases are identical, except that they involve different shipments, and may be considered together.

It is not disputed that, if the shipment of the cotton was part of an export movement, as contended, they would not be subject to the transportation tax, as its imposition would be a direct burden on articles exported from a state, in violation of article 1, § 9, of the Federal Constitution. Spalding & Bros. v. Edwards, 262 U. S. 66, 43 S. Ct. 485, 67 L. Ed. 865; United States v. Hvoslef, 237 U. S. 1, 35 S. Ct. 459, 59 L. Ed. 813, Ann. Cas. 1916A, 286; Thames & Mersey Marine Ins. Co. v. U. S., 237 U. S. 19, 35 S. Ct. 496, 59 L. Ed. 821, Ann. Cas. 1915D, 1087.

The material facts found by the District Court, which are not disputed, are these: The Gosho Company is engaged exclusively in exporting cotton from Galveston, Tex., to foreign countries. Contracts for the sale of cotton by grades are made, and after that the cotton is purchased to fill the orders. In purchasing cotton at interior points, it is necessary to buy the entire lot offered. The number of bales in each lot purchased varies, and several different grades may be found in the lot. The company sends classers into the interior to class the cotton before purchasing and paying for it, and in order to determine its fitness to fill the orders on hand. After shipment to Galveston, the cotton is regraded, assembled in lots according to grades, and appropriated to the sales already made. It is also given high density compression, which is necessary to secure ocean carriage. After being sorted and compressed, the cotton on the transportation of which the tax was collected was actually exported.

From the above-stated facts it is clear that, from the moment of purchase and before the transportation began, all of the cotton was intended in good faith to be exported, and there was no probability of its being diverted to sales within the United States. When the rail transportation first started from the interior points, the export movement began. It is immaterial that at that time the ultimate destination of each bale

had not been determined. All were intended to go out of the country and were on their way. The temporary stoppage at Galveston for sorting and compression was reasonable and necessary for transshipment, in order to enable the cotton to reach its destination, and cannot be considered as interrupting the export movement. Hughes Bros. Timber Co. v. Minnesota, 272 U. S. 469, 47 S. Ct. 170, 71 L. Ed. 359; Champlain Realty Co. v. Brattleboro, 260 U. S. 366, 43 S. Ct. 146, 67 L. Ed. 309, 25 A. L. R. 1195; Texas & N. O. R. Co. v. Sabine Tram Co., 227 U. S. 111, 33 S. Ct. 229, 57 L. Ed. 442; So. Pac. Term. Co. v. Interstate Commerce Com., 219 U. S. 498, 31 S. Ct. 279, 55 L. Ed. 310; Railroad Com. v. Tex. & Pac. R. Co., 229 U. S. 336, 33 S. Ct. 837, 57 L. Ed. 1215.

The export character of the transportation to Galveston being established, it follows that the tax assessed was illegal, as imposing a burden on articles exported from a state.

Affirmed.