## ANDERSON, CLAYTON & CO. v. WICHITA VALLEY RY. CO. et al. STATE OF TEXAS, (Intervener).

### No. 713.

District Court, S. D. Texas, Houston Division.

July 2, 1936.

Fulbright, Crooker & Freeman, John H. Crooker, and Carl G. Stearns, all of Houston, Tex., for plaintiff.

Thompson & Barwise and Fred L. Wallace, all of Fort Worth, Tex., for defendants.

Wm. McCraw, Atty. Gen., Wm. Madden Hill, Asst. Atty. Gen., Clark C. Wren, Sp. Asst. Atty. Gen., and A. L. Reed and W. C. Scurry, both of Dallas, Tex., for intervener.

KENNERLY, District Judge.

Plaintiff, an unincorporated joint-stock association, a citizen of Texas, a large cotton merchant with its domicile and principal place of business at Houston, in this district and division, brings this suit in equity against the defendants, Wichita Valley Railway Company, with its principal office in Fort Worth, Tex., the Fort Worth & Denver City Railway Company, with its principal office in Forth Worth, Tex., and the Burlington-Rock Island Railroad Company, with its principal office in Houston, Tex., in this division and district; all being railroad corporations organized under the laws of Texas, engaged in operating railroads in Texas, and common carriers under the Interstate Commerce Act (49 U.S.C.A. § 1 et seq.).

Plaintiff alleges that it is buying cotton at various points in Texas, and selling it in foreign countries and in other states of the United States, principally along the Atlantic Seaboard, and that all of its cotton purchases are moved to and concentrated at the Port of Houston and other Texas ports, from which its final movements occur to destination.

That about October 4, 1935, it purchased from the Rochester Gin Company at Weinert, Tex., a point on the line of the defendant Wichita Valley Railway Company (called for brevity W. V. Ry. Co.), 30 bales of cotton which moved to Houston over the lines of the defendants, on bill of lading issued to the said Gin Company at Weinert, Tex., by W. V. Ry. Co. on October 4, 1935, which bales of cotton arrived at Houston October 12, 1935, and were subsequently, i. e., October 12, 1935, October 17, 1935, October 18, 1935, October 28, 1935, October 29, 1935, and November 5, 1935, delivered on board ships destined to foreign countries, in fulfillment of contracts for the sale and delivery of cotton made by plaintiff prior to the purchase of such 30 bales. That such shipment of such 30 bales is typical of the business of buying and selling cotton as carried on by plaintiff, and that plaintiff has made and will make in the future daily similar shipments of cotton, etc.

That although plaintiff has paid the freight to defendants on such shipment and other similar shipments previously made, at the rate fixed and prescribed by defendants' interstate tariff, instead of treating such shipments as interstate in character, and applying to such shipments and collect-

ing from plaintiff only such interstate rate, the defendants now propose to treat such shipments as intrastate in character, and apply thereto and collect from plaintiff a higher intrastate rate, and are undertaking to force plaintiff to pay such higher intrastate rate. That defendants have notified plaintiff that all similar future shipments will be treated an intrastate in character, and not interstate, and the intrastate rate applied, and that plaintiff will be required to pay such higher intrastate rate thereon, etc. .

Plaintiff also seeks to bring the case within the Declaratory Judgment Act of June 14, 1934, as amended, section 400, title 28 U.S.C.A.

Plaintiff prays preliminary injunction, and on final hearing, permanent injunction, restraining defendants from collecting from plaintiff the freight on such shipment of 30 bales and other similar shipments at and under the intrastate rate, and enjoining defendants from treating further similar shipments of plaintiff as intrastate in character, and applying thereto and collecting from plaintiff such intrastate rate. After a hearing, preliminary injunction was granted.

Defendants have answered to the merits, in effect denying plaintiff's allegations, except in certain respects not necessary to here state, and deny the applicability of the Declaratory Judgment Act.

After the granting of the preliminary injunction, the state of Texas sought permission, and was permitted, to intervene, subject to all legal objections, and has intervened, claiming collusion between plaintiff and defendants, denying plaintiff's allegations, and claiming the shipments to be intrastate in character and subject to intrastate rates and to the regulations incident to intrastate shipments; also denying the applicability of the Declaratory Judgment Act.

The jurisdiction is under subdivision (8) of section 41, title 28 U.S.C.A.

While on the face of the pleadings, the controversy here as between plaintiff and defendants is with respect to the difference in the intrastate rate and interstate rate, and with respect to the right of plaintiff to have its shipments recognized and handled as interstate shipments, with incident rights as to compressing and place of compressing, etc., it is doubtless true that the real controversy is not reflected by the pleadings, but is between plaintiff, on the one hand, and the owners of certain compresses along defendants' lines of railroad, on the other hand, over the fact that if plaintiff's ship-

ments are intrastate in their nature, the bales of cotton are required to be compressed at the first compress in either direction from point of origin, while if the shipments are interstate in their nature, the bales of cotton may ordinarily be compressed at any compress in direct line of transit. This is a question that has arisen from time to time over a period of a number of years, and over which there has been much controversy.

The case has, by agreement, been tried largely on affidavits and depositions. These are voluminous, but the following facts are fair deductions therefrom:

(a) Plaintiff is a large cotton merchant, with its principal place of business in Houston, and is engaged in buying cotton throughout Texas, and shipping same to, and selling same in, foreign countries and in other states of the United States, principally along the Atlantic Seaboard. Cotton so purchased in Texas is moved to and concentrated at the Port of Houston and other Texas ports. The use made of cotton at Houston and other Texas ports and vicinity is very small and of no consequence; the purpose of such concentration being to ship it to other states and to foreign countries.

(b) It was and is the practice and custom of plaintiff to sell or contract to sell cotton in foreign countries and in other states prior to and in advance of buying it in Texas. Also, plaintiff kept in foreign countries supplies of cotton for delivery there.

(c) On or about September 28, 1935, plaintiff, in order to meet its contracts, or some of them, mentioned in paragraph (b) hereof, and with the intention to ship some to foreign countries, and/or other states, purchased from the Rochester Gin Company of Rochester, in the northwestern portion of Texas, 30 bales of (uncompressed) cotton, marked O. B. L., and on or about October 4, 1935, caused such gin company to deliver same to the defendant W. V. Ry. Co. at the station of such railway company at Weinert, Tex., for shipment over the lines of defendants to Houston. The W. V. Ry. Co. for itself and the other defendants, executed and delivered to gin company a through bill of lading covering such cotton. By the terms of such bill of lading, such cotton was to be delivered to the order of the shipper (the gin company) with notation thereon to "notify Anderson, Clayton Co" (plaintiff). Thereupon, the gin company

drew a draft on plaintiff for the agreed price of the 30 bales of cotton (subject to weight, etc., adjustments), attached the bill of lading to the draft, which draft was cashed by a local bank, forwarded to a bank in Houston, the draft paid by, and bill of lading delivered to, plaintiff. On the arrival of the cotton at Houston, it was delivered to plaintiff.

(d) The W. V. Ry. Co. (as did all defendants) knew that there was no substantial use made of cotton at Houston, and that the 30 bales were destined for other states or foreign countries, and with the approval of the shipper, gin company, marked the bill of lading "Interstate Shipment."

(e) The gin company knew, it being common knowledge, that there is and was substantially no use made of cotton at the Port of Houston, and that this and substantially all cotton consigned there was destined to other states or foreign countries.

(f) After shipping the cotton, obtaining bill of lading, and drawing and cashing the draft, the gin company had no further interest in the transaction other than to have minor readjustments as to weights, etc.

(g) The 30 bales of cotton were transported to Wichita Falls, where they were unloaded, compressed to the size usual for export, reloaded, and continued on to Houston over defendants' railway lines, arriving there on or about October 12, 1935, where they were sorted as to class and grade, and were shipped to foreign countries October 12, October 17, October 18, October 25, October 29, and November 5, 1935, resectively.

(h) Such cotton was purchased by plaintiff, and the transportation thereof caused to be begun by plaintiff, with the intention and purpose of shipping same to such foreign countries, and/or other states, and the persons who sold such cotton to plaintiff and the defendant railway companies knew of such purpose, and to the extent that they had any intention, they intended that same should be shipped to such foreign countries or other states. The record shows that such intention was carried out.

(i) The procedure with respect to such 30 bales is typical of many hundred similar transactions where, in carrying on plaintiff's business of cotton merchant, cotton was purchased by plaintiff at various points in Texas before and after the date of purchase of such 30 bales (i. e., during the 1935 and 1936 cotton season), and will be purchased by plaintiff in the future, and shipments made, and to be made, over defendants' lines, and the cotton compressed enroute, etc. In some instances, the cotton went, or will go, to foreign countries, and in some instances, to other states. While there may have been and may be in certain instances some unimportant variations, the procedure was, and will be, substantially as above set forth.

(j) In making sales and contracts to sell cotton in foreign countries and other states, plaintiff agreed to sell and ship to purchasers particular classes or grades of cotton. Since the cotton which plaintiff purchased and caused to be shipped over defendants' lines was of many classes and grades, it was necessary for same to be concentrated at some point and graded and classified, in order to fill this order and the other order for a certain grade and class of cotton. Between the time the cotton was unloaded from the defendants' cars at Houston and other ports and the time it was loaded into ships, this grading and classifying was done. In isolated instances, some of the bales of cotton in plaintiff's many and numerous shipments remained in Houston longer than did the 30 bales above mentioned, and in some minor instances, bales of cotton out of such shipments were, during all or part of such time, kept in warehouses, and owners of such warehouses issued to plaintiff negotiable warehouse receipts covering same, but such bales finally continued their movement to foreign countries and other states. These, however, were isolated instances; the great bulk of plaintiff's cotton being handled as were the 30 bales. Plaintiff contemplated the use of such warehouse receipts in its financing, but the evidence is not definite and clear that it did so. Plaintiff's operations hereafter will be along the same general lines.

(k) There is no evidence in the record of collusion of any character between plaintiff and defendants in this case. Plaintiff has paid the freight on the 30 bales of cotton and other similar shipments at the interstate rate, and defendants are attempting to collect, in some instances by suit in a state court, the freight at the higher intrastate rate, or the difference between the rates. Defendants have notified plaintiff that all future similar shipments by plaintiff will be handled and treated as intrastate shipments, and shipped, stopped for compression, compressed, and freight required to be paid accordingly. This will result in irreparable injury and damages to plaintiff, for which plaintiff has no adequate remedy at law.

1. The question here is not altogether whether these shipments are interstate and foreign commerce, but whether they are that particular form of interstate and foreign commerce which Congress has subjected to regulation with respect to rates under the Interstate Commerce Act (49 U.S. C.A. § 1 et seq.). See Pennsylvania R. R. Co. v. Ohio Public Utilities Commission, 298 U.S. 170, 56 S.Ct. 687, 80 L.Ed. 1130.

I think there is no material difference between the facts here and the facts in Texas & New Orleans R. R. Co. v. Sabine Tram, 227 U.S. 111, 116, 33 S.Ct. 229, 57 L.Ed. 442, 445, cited (apparently with approval) in Pennsylvania R. R. Co. v. Ohio Public Utilities Commission, supra, except as to the lapse of time in some instances, between the arrival of the cotton in Houston and the time of its departure on a vessel for another state or foreign country and its handling during that period, as shown by the findings of fact. But I do not believe the difference is such as to require the holding that such shipments are Intrastate in their nature. See Southern Pacific Terminal Co. v. Interstate Commerce Commission 219 U.S. 498, 526, 31 S.Ct. 279, 55 L.Ed. 310, 320; Railroad Comm. of Ohio v. Worthington, 225 U.S. 101, 109, 32 S.Ct. 653, 56 L.Ed. 1004, 1008, cited in the Sabine Tram Case. Also Swift & Co. v. U. S., 196 U.S. 375, 398, 25 S.Ct. 276, 49 L.Ed. 518, 525; Board of Trade of Chicago v. Olsen, 262 U.S. 1, 35, 43 S.Ct. 470, 67 L.Ed. 839, 849; Binderup v. Pathe, 263 U.S. 291, 293, 44 S. Ct. 96, 68 L.Ed. 308; Stafford v. Wallace, 258 U.S. 495, 497, 42 S.Ct. 397, 66 L.Ed. 735, 23 A.L.R. 229; Champlain Realty Co. v. Brattleboro, 260 U.S. 366, 367, 43 S.Ct. 146, 67 L.Ed. 309, 310, 25 A.L.R. 1195; Carson Petroleum Co. v. Vial, 279 U.S. 95, 49 S. Ct. 292, 73 L.Ed. 626; U. S. v. Gosho Co. (C.C.A.5th), 23 F.(2d) 675; U. S. v. Picou, 71 F.(2d) 854; Hohenberg v. L. & N. Ry. Co. (C.C.A.) 46 F.(2d) 952.

This case is easily distinguishable from Atlantic Coast Line R. Co. v. Standard Oil, 275 U.S. 257, 48 S.Ct. 107, 72 L.Ed. 270; Arkadelphia Milling Co. v. St. L. S. W. Ry., 249 U.S. 134, 39 S.Ct. 237, 63 L.Ed. 517; Bacon v. People of Illinois, 227 U.S. 504, 33 S.Ct. 299, 57 L.Ed. 615; Chassaniol v. Greenwood, 291 U.S. 584, 54 S.Ct. 541, 78 L.Ed. 1004; Coe v. Errol, 116 U.S. 517, 6 S.Ct. 475, 29 L.Ed. 715; Chicago, M. & St. Paul R. Co. v. Iowa, 233 U.S. 334, 34 S.Ct. 592, 58 L.Ed. 988; Federal Compress & Warehouse Co. v. McLean, 291 U.S. 17, 54 S.Ct. 267, 78 L.Ed. 622; General Oil v. Crain, 209 U.S. 211, 28 S.Ct. 475, 52 L.Ed. 754; Gulf, C. & S. F. R. Co. v. State of Texas, 204 U.S. 403, 27 S.Ct. 360, 51 L.Ed. 540.

2. I conclude that plaintiff is entitled to judgment, enjoining defendants, as prayed for, except as against the prosecution of the suits by defendants against plaintiff already pending in the state courts.

3. Under the Declaratory Judgment Act, I conclude that plaintiff is entitled to judgment, declaring all such shipments to be interstate in character, and that they come within the Interstate Commerce Act (49 U.S.C.A. § 1 et seq.). Gully v. Interstate Natural Gas Co. (C.C.A.) 82 F.(2d) 145; Ohio Casualty Ins. Co. v. Plummer (D.C.) 13 F.Supp. 169; Commercial Casualty Ins. Co. v. Humphrey (D.C.) 13 F.Supp. 174.

Let a decree be prepared and presented accordingly.